251 S.W.2d 348 (1952)
HARRISON
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28375.
St. Louis Court of Appeals, Missouri.
September 16, 1952.
Rehearing Denied October 17, 1952.
*349 Mattingly, Boas & Richards and Lloyd E. Boas, St. Louis, for appellant.
Hullverson & Richardson, St. Louis, for respondent.
BENNICK, Presiding Judge.
This is an action for damages for personal injuries sustained by plaintiff, Elizabeth D. Harrison, while a passenger on a westbound Lindell bus owned and operated by defendant, St. Louis Public Service Company.
Upon a trial to a jury in the Circuit Court of the City of St. Louis, a verdict was returned in favor of plaintiff, and against defendant, for the sum of $5,450. Judgment was rendered in accordance with the verdict; and after an unavailing motion for a new trial, defendant gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.
The case was pleaded and submitted upon the theory of res ipsa loquitur predicated upon the charge that while plaintiff was standing in the aisle, the bus was caused to *350 give a sudden, violent, and unusual jerk whereby she was thrown to the floor and injured.
Plaintiff was apparently about seventytwo years of age at the time of the accident, which occurred on July 3, 1948. She received her injury as the bus was crossing Taylor Avenue at its intersection with Lindell Boulevard. She had boarded the bus at 4400 Lindell, and had ridden but a single block when the accident took place. The bus was crowded, and she was standing about midway of the bus, facing to the south, and holding on to a horizontal rod running lengthwise of the bus above her. All that she knew was that there was a sudden jerk of the bus which broke her grip on the rod to which she was holding and caused her to fall to the floor of the bus. She herself described the jerk as a "big jerk", while a fellow passenger referred to it as "unusually long and hard".
The driver was called as a witness for defendant, and his explanation of the occurrence was that as he prepared to stop at the regular stopping point west of Taylor Avenue in response to a signal from a passenger, he glanced in his rear-view mirror and saw plaintiff backing towards him on her heels as though she had in some way lost her balance. At that time, according to his testimony, he had "just touched the brake to slow the bus down"; and as he observed plaintiff's predicament from which he concluded that he was powerless to extricate her, he "eased the stop", or, in other words, permitted the bus to roll to a stop so as to avoid any aggravation of the force of her impending fall.
For its first point defendant charges error in the action of the court in refusing to grant it a new trial upon the ground that one of the jurors, Pick by name, had neglected and refused to disclose a prior claim against defendant when interrogated about prior claims on voir dire examination.
The record shows that in this case the voir dire examination of the prospective jurors was quite extensive. Plaintiff's counsel first inquired into their qualifications at considerable length, and at the conclusion of his examination the same course was pursued by defendant's counsel.
The basis for the insistence upon juror Pick's disqualification came near the beginning of the interrogation of the panel by defendant's counsel, when counsel inquired whether any member of the family of any of the panel had ever had a claim against defendant or any of its predecessors. Two of the panel answered in the affirmative and identified the claims by members of their respective families. However all the others, including Pick, gave no response, which was of course to be taken as an answer in the negative.
In its motion for a new trial, after the return of a unanimous verdict against it, defendant set up as one of its grounds for a new trial that juror Pick had failed to advise its counsel on voir dire examination that his wife had previously made a claim against it for personal injuries sustained as the result of an accident occurring on September 1, 1949, which was a year and seven months before the trial. Defendant further alleged that the information concerning such claim had not come to its attention until the very day that the motion for a new trial was filed.
Confronted with the motion, plaintiff obtained and filed the affidavit of juror Pick in which Pick stated, in substance, that his wife had indeed sustained a minor bruise on the occasion in question while a passenger on one of defendant's buses; that at no time had either he or his wife contacted defendant or made a claim against it, but that subsequently one of defendant's adjusters had called at their home and had voluntarily paid the sum of $50 to close the file; that he had dismissed the incident from his mind by the time he was summoned for jury duty a year and seven months later, and had not recalled it until he was informed of the reference to it in the motion for a new trial; and that such incident had not in any way influenced him in arriving at his decision in the case.
No one would question the fact that the parties to a lawsuit are privileged to have it heard and determined by a fair, unbiased, and impartial jury. O'Brien v. *351 Vandalia Bus Lines, 351 Mo. 500, 173 S.W. 2d 76; Harding v. Fidelity & Casualty Co., Mo.App., 27 S.W.2d 778. Nor, if an objectionable juror is permitted to sit in the case, does it render the situation harmless that a unanimous verdict may be returned. Even though as few as nine jurors are permitted to bring in a verdict in a civil action, the parties are none the less entitled to have the decision based upon the deliberation of twelve qualified members. Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711; Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459.
In a case such as this, where a juror has failed to disclose some fact on voir dire examination which might reasonably have affected his qualification to sit as a juror in the case, the question of what consequence shall follow resolves itself into one of whether he was guilty of an intentional concealment of the matter concerning which he was being subjected to interrogation. If the conclusion be reached that his failure to answer amounted to deception, and that the losing party was thereby denied the fair trial to which it was entitled, the only effective remedy would be to set aside the verdict and award a new trial. Piehler v. Kansas City Public Service Co., supra. However an unintentional failure to disclose information not directly connected with the case does not necessarily show prejudice on the part of the juror so as to call for the trial of the case anew. Davis v. Kansas City Public Service Co., 361 Mo. 61, 233 S.W.2d 679; O'Brien v. Vandalia Bus Lines, supra. In the final analysis, therefore, the question of what the result shall be must be left primarily to the discretion of the trial court, reviewable only for abuse, and with the court's decision to conclude the matter unless an abuse of discretion unmistakably appears. Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795.
In the present instance, all that defendant had to stand on was the fact that when the prospective jurors were asked whether any member of their respective families had ever had a claim against defendant, juror Pick gave no response, although the truth was that one year and seven months previously his wife had accepted a settlement of $50 which was tendered her by a representative of defendant. However defendant did not attempt to refute Pick's explanation, which was that the injury had been trifling; that neither he nor his wife had made a claim; that the settlement had been the voluntary act of defendant; that his failure to disclose such incident had been unintentional and wholly due to lapse of memory; and that the matter had in no way influenced his decision in concurring in the verdict which was returned. Except for his mere lack of response to counsel's question, there is no pretense of any basis from which bias or prejudice might be inferred; and in this respect the situation is far different from that which obtained in Piehler v. Kansas City Public Service Co., supra, the case upon which defendant relies. We appreciate that Pick was not to be the judge of his own qualification, but the question reaches us, not upon his own conclusion, but upon the court's conclusion that he was free from animosity or ill-will towards defendant. The court's discretion appears to have been soundly exercised, and there is no occasion for us to interfere with its action in refusing a new trial upon the particular ground. Davis v. Kansas City Public Service Co., supra; O'Brien v. Vandalia Bus Lines, supra.
We have already pointed out that in submitting the case, the court charged the jury at plaintiff's request that if they found that on the occasion in question, while plaintiff was standing in the aisle, the bus was caused to give a sudden, violent, and unusual jerk whereby she was thrown to the floor and injured, such facts were sufficient circumstantial evidence to warrant a finding that defendant had been negligent, and the jury were entitled to so find unless they found from other facts and circumstances in evidence that the occurrence had not been due to defendant's negligence.
Following this the court gave instruction No. 8 at plaintiff's request in which it told the jury in the first paragraph of the instruction *352 that if they found and believed from the greater weight of the credible evidence that the facts were as submitted in plaintiff's verdict-directing instruction, then plaintiff had met and carried the burden of proof required of her under the law and the other instructions.
By the second paragraph of the instruction the jury were informed that such negligence need not be proved by direct and specific testimony, but might be inferred from the facts and circumstances in evidence.
Defendant assails the first paragraph of the instruction upon the ground that it was the equivalent of a peremptory instruction for plaintiff upon the mere finding of a sudden jerk and an injury. It is enough to say that this complaint is foreclosed in this court by the decisions of the Supreme Court in Venditti v. St. Louis Public Service Co., Mo.Sup., 240 S.W.2d 921, and Davis v. Kansas City Public Service Co., supra.
However defendant is also critical of the second paragraph of the instruction in so far as it charged the jury that negligence could be inferred from the facts and circumstances in evidence. Defendant insists that the instruction, as worded, was entirely too broad in that it permitted the jury to infer negligence from facts and circumstances in evidence (such, for instance, as the driver's testimony respecting a smooth and rolling stop) which did not constitute a basis for a res ipsa loquitur submission.
Reading the second paragraph along with the first paragraph, and considering the whole instruction in the light of plaintiff's verdict-directing instruction to which it specifically referred, the language in question is not fairly subject to the objection made against it.
It will be recalled that the facts submitted in plaintiff's main instruction were that while plaintiff was standing in the aisle, the bus was caused to give a sudden, violent, and unusual jerk whereby she was thrown to the floor and injured. By the first paragraph of the instruction now under consideration the jury were told that if they found the facts to be as submitted in plaintiff's main instruction, plaintiff in that event had met and carried her burden of proof. Then followed the direction that "such negligence"the negligence submitted under plaintiff's main instruction need not be proved by direct and specific testimony, but might be inferred from the facts and circumstances in evidence. With what facts and circumstances was the court concerned? Very obviously with the facts and circumstances showing that while plaintiff was standing in the aisle, the bus was caused to give a sudden, violent, and unusual jerk whereby she was thrown to the floor and injured. The jury were consequently not given a roving commission to base their verdict upon facts and circumstances other than those which justified the submission of the case upon the theory of res ipsa loquitur, and it seems inconceivable that the jury could have been misled in the respect suggested by defendant.
For its next point defendant contends that the court erred in overruling, or in refusing to rule upon, the objection of its own counsel to the argument of plaintiff's counsel to the effect that plaintiff, in the first instance, had attempted to handle her claim herself. The point relied upon is that the purport of such argument was to imply that plaintiff had made persistent efforts to settle her claim, and that it was only when defendant had refused to pay her what was referred to in argument as "a fair and decent amount" in settlement that she had been compelled to employ an attorney to prosecute her claim in court. Defendant insists that the argument was designed to arouse the prejudice of the jury, and that it was responsible for what defendant claims was a "grossly excessive" verdict in the case.
The question is actually not one of the purport of the argument made by plaintiff's counsel, since the record shows that he spoke so plainly and precisely as to have left no doubt of his intention. However the answer is that there was nothing illegitimate about the argument under the facts and circumstances of the case; and as a matter of fact it told the jury no more than might undoubtedly be said with equal propriety in the great majority of damage *353 suits. We would assume that in most instances it would not be until after a claimant had been unable to settle his claim to his satisfaction that he would go to the expense of employing an attorney to represent him; and in this particular case it was defendant's own counsel who brought out on plaintiff's cross-examination that she had not employed an attorney until the second year after her injury had been received. Furthermore it was disclosed by other evidence that plaintiff had submitted to a medical examination at the request of defendant a year before she employed her attorney, so that in this case the argument concerning the making of her claim and her subsequent employment of counsel was not left to rest upon mere supposition, but instead had positive and uncontradicted support in the testimony.
Defendant's counsel was therefore wrong in his objection, which was based solely on the proposition that there had been no evidence of what progress plaintiff had made in her own handling of her claim during the two years preceding her employment of counsel. Moreover the court did overrule the objection, although it is true that in doing so it mistakenly assumed that the objection had been interposed in the form of a motion to discharge the jury.
Now in further support of the objection, defendant also complains of the argument upon the ground that it improperly injected the question of an attempted compromise of the case. What defendant overlooks, however, is the fact that the prohibition against reference to offers of compromise inures only to the benefit of the proponent of the offer. In other words, the law favors compromise, and therefore holds evidence of an unavailing offer of compromise to be inadmissible against the party making the offer, since otherwise the offer might be construed as a confession of liability. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691. But here there was no suggestion that defendant had ever offered to compromise plaintiff's claim. On the contrary, the argument was directly to the contrarythat for two years plaintiff had been trying to handle the matter herself "with no consequences and no results". Argument implying that defendant had previously denied the claim was entirely consistent with its position at the trial; and any statement with respect to the matter could only have been prejudicial if it had tended to disclose, not a disclaimer of liability, but a recognition of liability on the part of defendant.
Complaining further of the argument, defendant insists that there were still other matters argued by plaintiff's counsel which this court should review, even though there was no objection by defendant's trial counsel at the time the argument was made. The contention is that the particular matters went far beyond the scope of the evidence, and were calculated to arouse bias and prejudice against defendant.
It is fundamental in the concept of appellate practice that save for certain recognized exceptions, questions of error not raised and properly preserved in the trial court will not be considered on appeal. This in fairness to both the lower court and the opposing party so that each may have the opportunity of promptly remedying the error, if it in fact amounts to error, and is of a character to be subject to correction. It is to this end that our code and rules provide that if a party is to be in a position to complain of some action of the court, he must not only make known to the court the action which he desires it to take or his objection to the action which it takes against him, but at the conclusion of the trial he must once again call all such matters to the court's attention in his motion for a new trial as a condition to his right of appellate review. Sections 510.210, 512.160, RSMo 1949, V.A.M. S.; Supreme Court Rule 3.23.
It is true that as an ultimate safeguard against a situation where some great wrong might be rendered incurable because of a mere procedural omission, provision is made that plain errors affecting substantial rights may be considered on appeal in the discretion of the court, though neither raised nor preserved in the trial court, when the court deems that manifest injustice or a *354 miscarriage of justice has resulted therefrom. Supreme Court Rule 3.27. It is this rule's saving grace which defendant seeks to invoke on this appeal in urging that we review those portions of the argument of plaintiff's counsel of which it now complains, even though its trial counsel saw no occasion to object at the time the argument was made. However it seems obvious that there is no proper basis upon which defendant can contend that manifest injustice or a miscarriage of justice resulted from the argument of plaintiff's counsel. If it means that the effect of the argument was to induce a verdict in plaintiff's favor, it can hardly claim that there was manifest injustice or a miscarriage of justice in view of the argument of its own trial counsel who expressly declined to ask the jury to bring in a verdict for defendant, but instead confessed his feeling that plaintiff was "entitled to something". If it means that the effect of the argument was to swell the verdict in plaintiff's favor, it preserved the point that the verdict was excessive, and raises such point on this appeal. However regarded, the situation is not one to call for the application of the rule in question; and for want of objection at the time of the argument, the matters now complained of are not here for our review.
The only point left to consider is whether the verdict was in fact excessive.
The evidence disclosed that prior to the accident plaintiff had been alert and quite active for a woman of her age. From her own account she had enjoyed fine health before the accident. The great force of her fall was upon her right side and shoulder. There were no broken bones except for the tenth rib, which was broken at a point three inches from the spine. Her principal disabilities consist of bursitis of the right shoulder, traumatic arthritis about her right shoulder, and an aggravation of a pre-existing arthritic condition in the lumbar region of the spine. The bursitis in the right shoulder is perhaps the most disabling of all, being shown to be very painful and to limit the motion of the arm. While plaintiff experienced pain in her back within two or three weeks after the accident, it did not occur to her until considerably later that it too was a result of the accident. Plaintiff's medical evidence attributed all such conditions to the injury, and indicated that they would all be permanent.
In passing upon the point of the size of a verdict, an appellate court is only concerned with the legal aspects of the question. It may determine whether a verdict was either inadequate as a matter of law or excessive as a matter of law, but between these two extremes the finding of the jury is conclusive save only as it is subject to the approval or disapproval of the trial judge, who has the power to weigh the evidence. In this case the trial judge exercised his discretion by letting the full verdict stand. Even though we should grant that an award of $5,450 approaches the maximum allowable for the injuries sustained, it would seem none the less in this case to have represented the calm and considered judgment of the jury when acting within its special function; and upon the record presented we can see no occasion for appellate interference.
It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON and RUDDY, JJ., concur.