**Ralph VINYARD, Plaintiff-Appellant,**

**v.**

**Lawrence J. HERMAN, Defendant-Respondent.**

**No. 10403.**

Missouri Court of Appeals, Southern District, Division One.

March 9, 1979.

John B. Newberry, Springfield, for plaintiff-appellant.

Dee Wampler, Stephen L. Shepard, Wampler & Wampler, Springfield, for defendant-respondent.

TITUS, Judge.

Brothers-in-law plaintiff and defendant, as equal shareholders, formed a corporation in 1970 to conduct a farm supply business. Plaintiff managed the business, was responsible for all facets of its operation and was paid a salary. Defendant received no salary, did not work at the store, was not directly involved in running it and possessed no key to the emporium. Albeit defendant cursorily and infrequently perused the records, he asseverated that he relied upon plaintiff to advise him on current standings of the affairs of the corporation. In April 1973, plaintiff represented he had a buyer for his shares willing to pay $90,000 therefor, but, per prior agreement, offered defendant first chance at the purported bargain. An agreement was struck whereby defendant was to pay the $90,000 via three $30,000 interest bearing promissory notes payable, respectively, in April 1974, April 1975 and April 1976. The principal on the first note and all interest then due on the others were duly paid. However, defendant thereafter balked at paying either the principal or interest on the two remaining notes and plaintiff brought suit (in two counts) thereon. Defendant answered and counterclaimed averring that he was induced to buy plaintiff's shares through false and fraudulent representations concerning the success of the business and the value of the stock; defendant prayed for rescission of the sale and restitution of all cash previously paid, or, alternatively, for $100,000 actual damages, exemplary damages, et cetera. Following trial, the jury returned verdicts for defendant on plaintiff's petition and for plaintiff on defendant's counterclaim. Plaintiff alone has appealed.

Plaintiff's points relied on II and IV are penned rather obtusely and appear transposed and somewhat commingled in the argument portion of the brief. Nevertheless,

we understand the points as asseverating that defendant was not entitled to have his defense of fraudulent misrepresentations submitted, or, if so, instructions 3 and 5 erroneously omitted requiring the jury to find that defendant, in relying on plaintiff's representations, was using ordinary care.

At defendant's request, the trial court gave two nearly identical instructions (number 3 and 5) relative to Counts I and II of plaintiff's petition, viz: "Your verdict must be for the defendant on Count I [II] of plaintiff's petition if you believe: First, plaintiff represented to defendant that the value of the plaintiff's share of the business was $90,000.00, that the business was profitable and that the profits during 1972 had exceeded $10,000.00, intending the [that] defendant rely upon such representations in purchasing plaintiff's share of the business, and Second, the representations were false, and Third, plaintiff did not know whether the representations were true or false, and Fourth, the representations were material to the purchase by defendant of plaintiff's share of the business, and Fifth, defendant relied upon the representations in making the purchase, and Sixth, as a direct result of such representation [sic], the defendant was damaged. (MAI [1] 23.05 modified Submitted by Defendant)." As written in MAI 23.05, the fifth paragraph reads: "Fifth, plaintiff (defendant herein) relied on the representation in making the purchase, and [in so relying plaintiff (defendant herein) was using ordinary care, and]." The Notes on Use indicate the bracketed portion of the fifth paragraph is to be omitted "when the right to rely is not in issue."

■ In reviewing plaintiff's contention that the evidence was not sufficient to support the giving of defendant's instruction on fraudulent misrepresentation, the evidence is to be reviewed in the light most favorable to the verdict with all the inferences from the evidence drawn in favor of the verdict. *Frantz v. State Farm Mut. Auto. Ins. Co.*, 526 S.W.2d 345, 346[1] (Mo. App.1975). When so viewed and in substance, the evidence disclosed that prior to

selling his shares in the close corporation, plaintiff was, in reality, operating the business in a manner which would suggest that he was its sole proprietor. Though defendant owned equal shares, plaintiff was indubitably the only active and the lone managerial officer of the corporation in whom defendant reposed complete trust. Whenever defendant may have occasionally questioned the success of the venture, his doubts were swiftly and repeatedly allayed by plaintiff's assurances that the business had been continuously profitable as evidenced by displayed monthly summary sheets, income tax returns and other matters arrayed in support of plaintiff's pronouncements. The circumstances clearly indicate that a confidential relationship existed between the parties and was applicable to plaintiff's dealings with the defendant. *Merrill v. Davis*, 359 Mo. 1191, 1200, 225 S.W.2d 763, 767[4] (1950). When a confidential relationship obtains, the general rule requiring the representee to exercise due diligence to avail himself of information within reach does not apply, and the representee is entitled to redress on representations which would otherwise harbor no relief for expressions of opinion relating to success or value. 37 C.J.S. Fraud § 35 a., pp. 282–284. Also, recovery on the ground of fraud will not be defeated because the representee has means of discovering fraud when there is a positive representation of fact [*Hutchings v. Tipsword*, 363 S.W.2d 40, 46[8] (Mo.App. 1962)], and "one may act 'upon a positive representation of fact notwithstanding . . . the means of knowledge [are] especially open to [the person to whom it is imparted].' . . . And this principle has special validity in circumstances where the facts may be assumed to be within the knowledge of the person who declares them." *Dewey v. Jenkins*, 567 S.W.2d 382, 388 (Mo.App.1978).

■ In MAI 11.02 "negligence" is defined as "the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar

---

1. Missouri Approved Jury Instructions, Second Edition.

circumstances" and, compatible therewith, in MAI 11.05 "ordinary care" is said to be "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Therefore, the definition of "negligence" is tantamount to defining lack of "ordinary care" and vice versa. The bracketed portion of paragraph Fifth of MAI 23.05 reading "[in so relying plaintiff (defendant herein) was using ordinary care, and]", supra, appears to go against the grain of the law. "Where the issue of fraud involves the element of the right to rely on the alleged fraud-feasor's representation, it is misleading to say the evidence must show fraud *plus* absence of negligence [or fraud plus the use of ordinary care]; and it is a misnomer to use the word 'negligence' in this connection, if it is understood as carrying its usual signification, because 'the law of fraud does not exact of the victim that degree of caution which some other hypothetically prudent person would have used, but only reasonable care in view of *his* situation.'" *Wood v. Robertson*, 245 S.W.2d 80, 84[3] (Mo.1952); *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 86 (Mo.1967); *Kestner v. Jakobe*, 446 S.W.2d 188, 195[7] (Mo.App.1969). But the apparent disparity which the writer gleans between the bracketed portions in paragraph Fifth of MAI 23.05 and the law just recast, need not be fathomed further. As the foregoing attests, we hold that under the circumstances herein the giving of the instruction was proper, that defendant had the right to rely and that the bracketed portion of paragraph Fifth was not required. Moreover, if there were facts which the plaintiff felt justified a more specific direction as to defendant's duty to use ordinary care before defendant relied on plaintiff's representations, plaintiff should have asked for such an instruction. "Nondirection in that respect was not error." *Monsanto Chemical Works v. American Zinc, Lead & Smelting Co.*, 253 S.W. 1006, 1010–1011[11] (Mo.1923); *Bowers v. S–H–S Motor Sales Corporation*, 481 S.W.2d 584, 589 (Mo.App.1972).

Plaintiff's point III reads: "The Court erred in not granting plaintiff a new trial based upon the affidavits submitted with plaintiff's motion for a new trial showing that Defendant had committed perjury since such facts were proved by affidavits and not controverted by the Defendant." This point relied on is penned in patent disregard of the requirements of Rule 84.-04(d), V.A.M.R., which are mandatory. *M & A Electric Power Cooperative v. Nesselrodt*, 509 S.W.2d 468, 470[1] (Mo.App.1974). The recitations, supra, are unadulterated abstractions because they do not state, in factual fashion, wherein and why defendant allegedly committed perjury and wherein and why the affidavits, whatever they were, demonstrate the commission of perjury. *Simpson v. Island View Sales Corp.*, 540 S.W.2d 624, 625[3] (Mo.App.1976). To understand the point as written, would require a study of the transcript on appeal and the argument portion of plaintiff's brief. This is something we are not required to do. *Brewer v. Blanton*, 555 S.W.2d 381, 386[12] (Mo.App.1977).

Plaintiff's point relied on I, which we consider last, says the trial court erred in allowing defendant to recount that plaintiff had refused his offer to compromise this dispute. In our opinion the trial court committed reversible error in permitting the defendant to testify, over plaintiff's objection, that defendant made this statement to the plaintiff in April 1975: "I told [plaintiff] that I wanted to share my part of the loss . . . I didn't want to beat [him] out of a penny. . . . That I would be willing to get an auditor, and if the way [plaintiff] sold the corporation was within $10,000 of the way it was supposed to be, I would pay the audit and all expenses and pay him every dime that we agreed to. And if there was more than $10,000 off that [plaintiff] would pay the audit expense and we would share the loss fifty-fifty." The obvious inference was that plaintiff did not accept.

Plaintiff's counsel objected to that testimony, and moved that it be stricken and the jury instructed to disregard it, on the ground that it was "an offer of compromise." During preliminary questioning

leading up to the attacked testimony, plaintiff's counsel had also objected on grounds of irrelevance and that the statement was self-serving.

We have found but two cases, neither cited by the parties, which approach the question; i. e., *Harrison v. St. Louis Public Service Co.*, 251 S.W.2d 348, 353[9] (Mo.App. 1952), and *Aiple v. South Side National Bank in St. Louis*, 442 S.W.2d 145, 152[11] (Mo.App.1969). However, for reasons stated, infra, neither *Harrison* nor *Aiple*, in our opinion, is authority for sustention of the trial court's ruling.

*Harrison*, 251 S.W.2d at p. 353, contains this statement: "[T]he prohibition against reference to offers of compromise inures only to the benefit of the proponent of the offer." In that case the defendant argued, on appeal, that the plaintiff had improperly injected the matter of an attempted compromise. That objection was not made in the trial court. Moreover, the court said that there was no showing that the defendant did attempt a compromise. The statement quoted from *Harrison* seems to have been a casual remark and, significantly, the court cited no supporting authorities.

*Aiple*, 442 S.W.2d at p. 152, contains this statement: "[W]hen evidence of the compromise offer is given by or on behalf of the one making the offer such evidence is admissible." In that case, however, the trial court *sustained* an objection to certain testimony on the ground that it constituted an unaccepted offer to compromise a disputed claim. The court of appeals, relying solely upon *Harrison*, made the statement quoted above but also concluded that the ruling of the trial court, although erroneous, did not constitute prejudicial error.[2]

"It is a general rule that an unaccepted offer to compromise a disputed claim does not constitute an admission on the part of the person making it, . . . This rule is based upon public policy, which favors the settlement of disputed claims out of court, and the courts treat a party's offer of compromise as an effort to obtain peace rather than as an admission of liability or of the validity of the other party's claim." 29 Am.Jur.2d, Evidence, § 629, p. 681.

■ It is true that the rule excluding evidence of unaccepted offers of compromise is usually invoked by the offeror. It does not follow that it may not be invoked by the offeree. In presenting the attacked testimony the defendant was casting himself, in the eyes of the jury, in the role of a would-be peacemaker whose well-intentioned efforts were thwarted by the refusal of the plaintiff to accept his proposition.[3]

At least one court has held that the offeree does have standing to object to evidence, presented by the offeror, concerning the contents of the unaccepted offer of compromise. *McDonald v. Whaley*, 228 S.W. 313,

---

2. Lending support to the statements quoted from *Harrison* and *Aiple* is the following: "During the trial, the appellee made mention of an offer by himself, which the appellant rejected, to have an independent third party appraise the value of electrical construction and to split the costs of the appraisal. The appellant contends that the court erred in refusing to strike this statement from the record as evidence of a compromise within Code § 38–408. Not only was there no evidence of a compromise (the appellee apparently did not agree to be bound by the appraiser's decision), but also the objection is not being made by the party which allegedly offered the compromise. Code § 38–408 was created in order to encourage settlements by letting a party which makes an admission or proposition with a view toward compromise rest' assured that its good-faith settlement attempt will not later be used against it in court. The appellant certainly did not make an admission or proposition with a view toward compromise, and the statement is not within the ambit of the statute." *Benn v. McBride*, 140 Ga.App. 698, 231 S.E.2d 438, 441[8] (1976).

3. This is demonstrated by a statement made in *defendant's* brief to the effect that the evidence was offered as "an acknowledgment of the debt and a showing of an attempt to adjust the loss sustained by defendant." Defendant also argues that plaintiff's refusal to accept the offer was "evidence of plaintiff's willingness and intent to defraud the defendant." We do not accept the latter argument. Offers can be greeted with stony silence for a variety of reasons, not the least of which is that the offer is so unreasonable as to be unworthy of a courteous rejection.

315[7] (Tex.Civ.App.1921).[4] There sellers, under a real estate contract, wrote a letter to the buyer in which they stated that they "had made the sale in good faith and were ready at any time to execute a deed." The buyer objected to the introduction of the letter on the ground that it was self-serving and was an offer of compromise. The appellate court affirmed the ruling of the trial court which had sustained the objection.

The maker of a compromise offer has sole control over its contents. He alone decides whether it is to be made at all. The recipient has no voice in either decision. He cannot prevent the mail from coming or a telephone from ringing and it is only natural for him to lend an ear to the contents. The sound policy of the law encourages the maker to speak. By the same token the recipient should not be dissuaded from listening.

For reasons stated, supra, the judgment nisi is reversed and the cause is remanded for a new trial on plaintiff's petition.

FLANIGAN, P. J., and CAMPBELL, MOORE and KENNEDY, Special Judges, concur.

4. Rev'd on other grounds, 244 S.W. 596 (Tex.Com.App.1922).