**CHASE THIRD CENTURY LEASING CO., INC., Respondent,**

v.

**Ronald K. WILLIAMS, d/b/a Speed Parts & Machine, Appellant.**

**No. WD 41653.**

Missouri Court of Appeals,
Western District.

Nov. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 2, 1990.

Kenneth D. Kyser, Moberly, for appellant.

Wayne E. Schirmer, Moberly, for respondent.

Before NUGENT, C.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellant, Ronald K. Williams, d/b/a Speed Parts & Machine, (hereinafter Williams) appeals from a judgment upon a jury verdict against him and favorable to Chase Third Century Leasing Company, Inc., (hereinafter Chase) in this action involving a dispute over a business equipment lease.

Chase is a Delaware Corporation with its principal business offices located in Moberly, Missouri. Williams operates a business located in Jackson, Mississippi.

Chase is in the business of financing business equipment through leases. By telephone solicitation, Chase contacts various sellers of equipment in all fifty states. After the sellers have been contacted by telephone, the sellers then contact Chase for financing when equipment is being sold. Chase sends blank preprinted lease forms to the various sellers through the mail.

In June of 1987, Williams was delivered a Minolta 410Z copy machine by Office Systems, Inc., a supplier with whom Chase does business and which is located in Jackson, Mississippi. Williams sought to lease the copier. Office Systems, Inc. contacted Chase and presented Williams with the lease at the time the copier was delivered.

Williams signed the lease on the delivery day and it was returned to a salesman from Office Systems, Inc., who mailed the lease to Chase. The lease was signed by a Chase agent on June 15, 1987.

The lease provided for 36 monthly payments of $130.67 plus sales tax and use tax of $7.84 each month for a total of $138.51. The lease also contained provisions for late charges of 10% of each delinquent payment. On the day that Williams signed the lease he paid a security deposit in an amount equal to twice the amount of the first installment.

By letter dated June 22, 1987, Chase informed Williams that his first lease payment was due on August 1, 1987, and thereafter on the first day of each successive month. The letter also advised Williams that he needed to have insurance on the copier.

Williams proceeded to remit his monthly rental payments to Chase at the business offices in Moberly. Although Williams acknowledged the due date of his payments was the first of each month, the record reveals that none of the payments were received by Chase on the due date. Chronologically, Williams' payments were as follows:

1. Defendant's first rental payment check # 4168 was dated 8/8/87 in the amount of $138.51 and was received at Plaintiff's business office in Moberly, Missouri, on August 12, 1987.

2. Defendant's second rental payment check # 4204, dated 9/4/87 in the amount of $175.00 (representing $138.51 plus $36.76 as to insurance) was received at Plaintiff's business office in Moberly, Missouri, on September 11, 1987.

3. Defendant's third rental payment check # 4244, dated October 9, 1987, in the amount of $138.51 was received at Plaintiff's business offices, Moberly, Missouri, on October 14, 1987, and Plaintiff assessed a late charge of $13.07.

4. Defendant's fourth rental payment check # 4274, dated 11/9/87 in the amount of $138.51 was received at Plaintiff's business offices in Moberly, Mis-

souri, on November 13, 1987, and Plaintiff assessed a late charge.

5. Defendant's fifth rental payment check # 4318, dated 12/10/87 in the amount of $138.51 was received at Plaintiff's business offices in Moberly, Missouri, on December 16, 1987, and Plaintiff assessed a late charge.

During the course of Williams' payments, Chase would send out reminder "invoices" on a thirty day basis to remind Williams of his payment obligations and giving notice of late charge assessments. Williams failed to pay his January, 1988, installment. Apparently, Chase agreed with Williams to waive or "write-off" two of the late charges in an attempt to save the lease. In February, 1988, Williams was telephoned by a Chase employee and was again explained the billing system and was requested to bring his account current. Evidently an agreement was reached whereby Williams would make the January, February and upcoming March payments with Chase agreeing to waive two of the previously assessed late charges. Williams issued a check on February 4, 1988, in the amount $428.00, representing the three payments and a late charge of $13.60, which was received by Chase on February 9, 1988.

In April, 1988, Williams returned the copier to Office Systems, Inc., without notifying Chase and made no further payments. A formal "Notice of Default", dated May 18, 1988, was sent by Chase and received by Williams on May 23, 1988. The notice advised Williams as to the accelerated balance due on the lease and demanded payment of $4,284.94. Williams took no action following receipt of the notice.

Chase took possession of the copier and on May 25, 1988, sent Williams a formal "Notice of Repossession and Intent to Either Sell or Dispose of Equipment" which Williams received on May 27, 1988. This notice informed Williams that he had fifteen days to pay the amount due or the equipment would be sold. Williams took no action within the fifteen day period.

Pursuant to the policy and procedure of Chase, notice was sent to companies in the

business of selling office equipment advising them as to the availability of repossessed equipment in Chase's possession and seeking bids thereon. Four bids were received on the Minolta 410Z copier, the highest being $750.00, from Superior Business Machines. Chase agreed to sell the copier to Superior. On June 24, 1988, Chase sent a Western Union mailgram to Williams advising him that a buyer had been located and that a private sale of the copier would take place on June 29, 1988, for the sum of $750.00. On June 27, 1988, Williams sent a letter to Chase, a portion of which was admitted into evidence. The portion offered but refused as evidence, and which is the subject of Williams' Point II, offered to purchase the copier for $2,570.63. This letter was received by Chase on June 29, 1988.

Chase did not respond to Williams' June 27 letter and sold the copier on June 29, 1988, for $750.00. Chase filed suit to recover the balance of the lease payments owing, minus the net proceeds received from the resale of the copier, along with costs and attorney's fees. Chase claimed damages for twenty-eight unpaid monthly installments of $138.51 minus $750.00 received from the sale of the copier, plus $1,599.00 attorney's fees.

The jury returned a verdict in favor of Chase and awarded damages of $4,465.94.

In point I, Williams argues that the trial court lacked jurisdiction in personam over him.

The equipment lease entered herein contained a "Forum Selection Clause" and a "Choice of Law Provision" which provided:

JURISDICTION: The parties to this Lease agree that the law, statutes, and the appellate decisions of the State of Missouri, shall govern in the construction of this Lease and as to the application of the remedies of the parties in the event of default. In the event of default by Lessee, Lessee hereby consents and submits to the venue and jurisdiction of the Circuit Court of Randolph County, Missouri, or any other Missouri County at Lessor's election, for the purpose of determining and enforcing Lessor's remedies pursuant to this lease agreement. This Lease, regardless of situs of final signature, shall be determined to be executed in the County of Randolph, State of Missouri.

Williams claims that this provision is void and unenforceable because it is unreasonable and unfair. He also argues that the jurisdiction requirements of § 506.500, RSMo 1986, the Missouri long-arm statute, were not satisfied.

■ Although it is generally necessary to satisfy the Missouri long-arm statute to obtain in personam jurisdiction over a nonresident defendant pursuant to § 506.500, jurisdiction over the person may be obtained by consent or by waiver. *State ex rel. Marlo v. Hess*, 669 S.W.2d 291, 294 (Mo.App.1984). See also, *Midwest Mech. Contr. v. Tampa Constructors, Inc.*, 659 F.Supp. 526 (W.D.Mo.1987).

■ Parties to a contract may agree in advance to submit to personal jurisdiction in a given court. *Midwest Mech. Contr.*, 659 F.Supp. at 530. (citations omitted). A party can freely consent to the personal jurisdiction of a court because personal jurisdiction is an individual right capable of being waived. *Id.* However, the forum selection clause containing the defendant's consent must comply with applicable due process standards. *Id*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Thus, the clause must have been obtained through freely negotiated agreements absent fraud and overreaching and its enforcement must not be unreasonable and unjust. *Id*, citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The party resisting enforcement of the clause, Mr. Williams, bears a heavy burden in convincing the court that he should not be held to his bargain. *Id.*

Williams argues that there was disparity in bargaining power, that Chase used a preprinted form contract and there was a great deal of inconvenience to him to be sued in Missouri, all factors attributing to his theory that the enforcement of the fo-

rum selection clause was unjust and unreasonable.

■ Clearly, the modern trend permits enforcement of a forum selection clause unless the party seeking to avoid its application persuades the court that the clause is unfair or unreasonable. *State ex rel. Marlo,* 669 S.W.2d at 293.

The court in *Midwest Mech. Contr.,* 659 F.Supp. at 530, addressed similar arguments posed by a Florida defendant and is indicative of the modern trend. The court did note that federal laws controlled in that case and the question of whether the clause violated Missouri public policy was thus irrelevant. However, there is no reason stated herein by Williams which dictates a different result than that reached by the federal court or that necessitates deviation from the modern trend towards enforcement of these clauses.

■ Williams presents no specific evidence to support his allegations of unfairness. Rather, he simply asserts a lack of bargaining power. Likewise, he suggests simply that there is nothing in the record to suggest that he could have bargained over the language in the pre-printed form contract. This suggestion does not include an assertion of the overreaching or fraud necessary to avoid the forum selection clause nor does it indicate unfairness sufficient to overcome the application of the clause. Further, Williams allegation of inconvenience of litigating in Missouri does not make the forum selection clause unreasonable or unfair such that Williams was deprived of his day in court. Although Williams suggests that he was deprived of the benefit of all of the witnesses who actually transacted the contract, he does not allege who these witnesses are or of what significance they would be to his case. Without more, Williams fails to carry his burden of showing that he should not be held to his bargain. Point I is denied.

■ In point II, Williams alleges error in the trial court's refusal to allow any evidence of his letter dated June 27, 1988, which he offered as an exhibit at trial. He claims that the letter written by him was in response to the mailgram received from Chase advising him that the copier would be sold. In the letter, the portion of which was not admitted, Williams offered to purchase the copier for $2,570.63.

Prior to trial, counsel for Chase filed a Motion in Limine requesting an Order prohibiting Williams from introducing the letter or eliciting any testimony as to the contents on the ground that it was an offer of settlement and a self-serving document. Williams argued that this letter was sent prior to any litigation and was an offer to redeem the collateral and further would show that Chase knew one day prior to the sale that Williams was willing to pay $2,570.63, more than the $750.00 bid which Chase accepted, which shows that the sale was not commercially reasonable. The trial court sustained Chase's motion.

■ Chase correctly cites authority for the proposition that offers of compromise of an existing controversy are privileged and inadmissible and the offeree may object to testimony as to another's offer of compromise. *Vinyard v. Herman,* 578 S.W.2d 938, 941 (Mo.App.1979). It matters not that the offer was made by Williams prior to any litigation as offers are privileged whether made before or after suit. *Starnes v. St. Joseph Ry., Light, Heat & Power Co.,* 22 S.W.2d 73, 79 (Mo.App.1929), aff'd 331 Mo. 44, 52 S.W.2d 852 (1932). Further, while the rule excluding evidence of unaccepted offers of compromise is usually invoked by the offeror, it does not follow that it may not be invoked by the offeree. *Vinyard,* 578 S.W.2d at 942.

In attempting to present the attacked exhibit, Williams was casting himself, in the eyes of the jury, in the role of would-be peacemaker whose well-intentioned efforts were thwarted by the refusal of Chase to accept his proposition, a practice held to be improper by the *Vinyard* court.

■ Williams' argument to the effect that the letter was offered to show his attempt to redeem the collateral and that the sale of the copier was not commercially reasonable, appears to be an attempt to

invoke Article Nine of the Uniform Commercial Code. Article Nine "applies to security interests created by contract, including ... lease[s] ... intended as security." § 400.9–102(2), RSMo 1986. The agreement between the parties is entitled "Equipment Lease". A review of the document indicates that it is a "true lease" and not as Williams would argue, security for a conditional sales contract.

To make this distinction, the Court must look to the instrument to determine the parties' rights and intentions. *Commercial Credit Equipment Corp. v. Colley*, 542 S.W.2d 329, 334 (Mo.App.1976); *Lendal Leasing v. Farmer's Wayside Stores*, 720 S.W.2d 376, 378 (Mo.App.1986) (citation omitted).

■■■ In determining whether an instrument is a lease or a conditional sales contract, the test usually applied is whether the instrument requires or permits the transferee to return the property in lieu of paying the purchase price. *Commercial Credit Equipment Corp.*, 542 S.W.2d at 334. If the return of the property is either required or permitted, the instrument will be held to be a lease; if the transferee is obligated to pay the purchase price, the contract will be held to be one of sale. *Id.* See also, § 400.1–201(37), RSMo 1986.

The lease herein provides that Williams will, at the expiration of the lease, have the option to purchase the copier, for its then fair market value. Clearly, there is nothing in the agreement between the parties to indicate that the agreement is other than a lease. That being the case, the Uniform Commercial Code becomes inapplicable and it was not necessary for Chase to show the sale of the copier was commercially reasonable, nor did Williams have the right to redeem said property. Williams' point II is denied.

In point III, Williams alleges that the trial court erred by failing to submit his proffered instruction which presented the issue of whether the collateral was sold in a commercially reasonable manner. The resolution of Williams' point II, likewise disposes of point III and for that reason need not be further discussed herein.

■■■ In his fourth and final point, Williams argues that the trial court erred in giving Chase's Instruction 7 because it did not instruct the jury to award such sum as they believed would fairly and justly compensate Chase for any damages Chase sustained as a direct result of the breach of contract.

Instruction 7 given to the jury read as follows:

If you find in favor of Plaintiff, Chase Third Century Leasing Company, Inc., then you must award Plaintiff such sum as you believe is the balance due Plaintiff under the contract. ·

Williams asserts that the complained of instruction submitted to the jury an improper measure of damages. He argues that the Instruction given was based on MAI 4.08, however, the record as supplied by Williams, contains no MAI reference to the given instructions. Williams maintains that the appropriate instruction should have been patterned after MAI 4.01 and should have read:

If you find in favor of Plaintiff, then you must award Plaintiff such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe it sustained as a direct result of the breach of contract mentioned in the evidence.

Failure to follow MAI is error, with the prejudicial effect of the error subject to judicial assessment. Rule 70.02(b). It is not enough to show erroneous deviation unless prejudice also appears. *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984). Where there is no more than a general objection, a party preserves nothing for appeal. *Schnucks Markets, Inc. v. Cassilly*, 724 S.W.2d 664, 667 (Mo.App.1987).

From the record it cannot be established which MAI the given instruction was based upon. It is not identical to 4.08 nor is it identical to 4.01. What is supported by the record is that the submitted instruction specifically addressed the proper measure of damages under the contract. Furthermore, the record indicates that Williams failed to make a specific objection to In-

struction 7 at trial and did not offer an alternative damages instruction.

Williams can not be held to have been prejudiced nor can the trial court be convicted of error under these circumstances. Finding no prejudice, point IV is denied.

The judgment below is affirmed.

All concur.