Jerry **SMOOT** and Patsy Smoot,
Plaintiffs–Respondents,

v.

John **HYDE** and Julia Hyde,
Defendants–Appellants.

No. 18376.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 1993.

Motion for Rehearing or Transfer to Supreme Court Denied June 8, 1993.

James L. Bowles, Ozark, for defendants-appellants.

David B. Smith, Springfield, for plaintiffs-respondents.

PARRISH, Chief Judge.

John Hyde and Julia Hyde (defendants) appeal from a judgment entered against them in an action brought by Jerry Smoot and Patsy Smoot (plaintiffs) for breach of an express warranty related to the condition of the heating system in a house defendants sold to plaintiffs. Plaintiffs' action for breach of express warranty was Count I of a two-count petition. Count II was an action for misrepresentation. The trial court dismissed Count II at the close of plaintiffs' evidence. This court reverses as to Count I and affirms as to Count II.

Plaintiffs purchased certain real estate from defendants. The real estate included a residence. The residence was heated by "[a] wood furnace with an electric backup." The real estate contract that plaintiffs entered into with defendants contained an addendum that stated:

In addition to the provisions of the contract and Standard Contract Provisions, the parties agree to the following:

1. Seller shall warrant that all electrical-mechanical systems, appliances and fixtures are in proper working order at the time of closing.

. . . . .

The contract also provided that plaintiffs had "the right to obtain a written inspection report" to determine whether there were "material defects not readily apparent to [plaintiffs]." The inspection was to be performed at plaintiffs' expense "by independent qualified inspectors." Any "latent material defects not acceptable to [plaintiffs]" were required to be reported, in writing, to defendants or their agent "including a copy of the inspection report" within 10 weekdays (excluding holidays) after "acceptance" of the contract by plaintiffs. The terms of the contract further stated, "If [plaintiffs do] not report any requirements within the 10 working day period, [plaintiffs] shall be deemed to have accepted the property in its condition on the date of contract and [defendants] shall deliver possession of the property on the possession date in substantially the same condition as on the contract date."[1]

Plaintiffs did not have the residence inspected before the sale closed. In October—the sale closed in July—plaintiffs had the heating system inspected. The person who performed the inspection for plaintiffs was in the business of selling, installing and servicing heating and air conditioning equipment. He testified, over the objection of defendants,[2] that he did not think the heating system was in proper working order. The witness' complaints included:

The type of wood furnace that that was, for one. Most appliances are—are manufactured and have testing organizations within the associations. Or the— The manufacturers do have people, such as Underwriters Laboratory, that sets standards that these appliances are made

---

1. Plaintiffs do not contend that the condition of the heating system was different on "the possession date" from its condition on "the contract date."

2. The person who inspected the heating system for plaintiffs testified. He was asked, on voir dire inquiry by defendants' attorney, whether he "would . . . be able to testify as to the condition of the heating and electrical system in the house at the date of closing." The witness answered, "Not at that time, without me being in the structure at that time." Defendants objected to the witness' testimony on grounds of materiality and relevancy. The objection was "taken under advisement" initially. It was later overruled.

to. These are tested to promote safety, health and welfare of the public and the people buying these appliances. This furnace in question, I have—An insurance adjuster could render an opinion on it as far as the safety of it. But I don't recognize that wood furnace as being a safe product.

The witness proposed "a replacement for a heating and air conditioning system." He estimated a replacement cost of $4,800.

Defendants testified that the heating and air conditioning system that was in the house they sold to plaintiffs was bought from a Mr. Stephens and Mr. Gray. Defendant John Hyde explained that the system had not been altered or changed since it was installed, stating, "I don't know anything about that kind of stuff. I accepted their work as what I paid for." Mr. Hyde was asked the following questions and gave the following answers regarding the operation of the heating system:

Q. And in the wintertime when you started a fire in the—in the furnace, did it work?

A. Yes, it did.

Q. Did it always work?

A. Yes.

Q. When you turned the thermostat up, did it get hotter?

A. Yes.

Q. And when you turned it down, did it get lower?

A. Yes.

The wood furnace that was part of the heating system was manufactured locally by Reggie Gray. Mr. Gray has made furnaces "for at least 30 years," although that is not his usual business. In his opinion the furnace was installed properly and was safe. He disagreed with plaintiffs' witness who had inspected the system and questioned its safety. When asked why he did not agree with the other witness' assessment, Mr. Gray explained, "Well, all the furnaces I've built, I've never knowed ... of one of them catching anything afire." He concluded that the furnaces had not caught anything on fire because "they're safe."

Mr. Gray explained the relationship of the wood furnace to the electric furnace that was part of the heating system:

When we was setting the [wood] furnace up and he had the duct work already in and stuff, said he had his electrical furnace, and he was going to turn the blower through the wood furnace, see, and use the one blower for both.

Mr. Gray testified further:

Q. Is that a proper way to install one of your furnaces to make it work right?

A. Well, I—I have mine hooked up with an air conditioner and wood, but I don't have no backup heat. And it—one blower works off of that.

Q. So, you're—What you're saying is that putting that blower in the way he did was—works in your house, too; doesn't it?

A. Yeah.

Q. And—

A. I'd say that. Yeah.

Mr. Hyde testified that he used the heating system in the wintertime while defendants lived in the house they sold to plaintiffs. He testified that he started fires in the wood furnace; that it always worked. He was asked the following question and gave the following answer:

Q. Mr. Hyde, is it your testimony that the—that the wood unit was integrated into the electrical system so that the thermostat controlled all the units?

A. When Mr. Stephens completed the job, he showed me what he had done. He took me upstairs. He acquainted me with the thermostat. He showed me how to build a fire in the thing. He acquainted me with the blower system. And for two years, that's exactly the way I did the house. I don't know any other way than the way he showed me to do it.

■ The trial court heard this case without a jury. It is, therefore, reviewable as specified by Rule 73.01(c). As such, this court's review is limited to determining whether there is substantial evidence to support the judgment, whether the judgment is against the weight of the evidence or whether it is the result of an erroneous

declaration or application of the law. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

Defendants present two points on appeal. Point I asserts that the trial court erred in awarding a money judgment for plaintiffs for the reason that there was no evidence presented from which damages could be determined. Point II asserts that the evidence was not sufficient to support the trial court's determination that defendants breached the express warranty that was contained in the real estate sale contract entered into by the parties.

The transcript that is part of the record on appeal includes the trial judge's announcement of the decision rendered. The trial judge stated a personal view regarding wood furnaces and summarized plaintiffs' evidence regarding damages. The trial judge first stated, regarding wood furnaces:

> I wouldn't—Of course, you know, my personal opinion is that I wouldn't—I wouldn't have a wood furnace, period, if you gave it to me. But, you know, a lot of people think that's the thing to do.

He then explained the judgment that was entered:

> And, you know, it's incumbent on the—the Plaintiffs to reduce—to minimalize [sic] damages. And if they could have fixed it—the furnace for—for nine—$1,900 two years ago; and, then, come around here now and tell us that, "Well, it's going to cost $4,800 to fix it," or whatever, I—You know, I just can't enter a judgment for them for what it costs to fix it now.
>
> The question is, what was it—what was it at the time two years, not now—not in 1992. So, my judgment is for the—for the Plaintiffs on Count I in the amount of $2,794 plus costs.

After announcing the judgment, the trial judge had a further discussion with defendants' attorney regarding damages. The following colloquy is part of the transcript that was filed with this court:

> THE COURT: Uh-huh. You're probably right on damages, that he—he'll lose if you appeal it. You know that; don't you?
>
> [DEFENDANTS' ATTORNEY]: I know I'm right.
>
> THE COURT: Huh?
>
> [DEFENDANTS' ATTORNEY]: I know I'm right.
>
> THE COURT: I know you are, too.
>
> . . . . .
>
> THE COURT: That's one I ruled that I'm going to get reversed on....

The subject that was discussed is the issue that is raised by defendants' first point on appeal. It is unnecessary, however, for this court to address that point. Resolve of defendants' second point is dispositive of the appeal.

Defendants' second point is directed to the language in the real estate contract in which defendants, as the sellers of the real estate, "warrant[ed] that all electrical-mechanical systems ... [were] in proper working order at the time of closing." The evidence was that the heating system had always worked. That evidence was unrefuted. Plaintiff Jerry Smoot, on cross-examination by defendants' attorney, acknowledged that plaintiffs used the electrical part of the heating system during the two years that they owned the residence; that it worked. Mr. Smoot acknowledged that it kept the house warm. He stated that plaintiffs had not used the wood furnace.

It is appropriate to note what the warranty did not include. There was no warranty that the residence was equipped with "state of the art" mechanical systems. There was no warranty that the design of the heating system (or the design of any other mechanical device in the house) could not be improved. There was no warranty that the heating system had been approved by Underwriters Laboratory. What was warranted was that the heating system, being one of the "electrical-mechanical systems," worked.

Defendants were not builders. They were not real estate developers. They were not dealers in residential property. They were homeowners who were selling a

residence in which they had lived. These circumstances must be considered in assessing whether the weight of the evidence supported the trial court's determination that there was a breach of the express warranty contained in the real estate contract. "[T]he scope of an alleged express warranty depends upon construction, in the light of all the surrounding circumstances, of the language used." *Stone v. Farmington Aviation Corp.*, 363 Mo. 803, 253 S.W.2d 810, 812 (1953).

Courts everywhere have repeatedly declared and applied the general rule that it is not within the province of the court to alter a contract by construction, or to make a new contract for the parties. It is unnecessary to cite cases to support the familiar rules that a court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and that a court may not read into a contract words which the contract does not contain.

*Rickey v. New York Life Ins. Co.*, 229 Mo.App. 1226, 71 S.W.2d 88, 93 (1934). "A contract which is clear and unambiguous on its face is not open to judicial construction." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.App.1991).

 The language in the contract that is the subject of this appeal is clear. Defendants warranted that the "electrical-mechanical systems" were in working order at the time of the July 1990 closing. The heating system was an electrical-mechanical system within the residence. There is no evidence but that it was in working order at the time in question. Further, although the contract permitted plaintiffs "to obtain a written inspection report" for purposes of determining whether there were unacceptable material latent defects in the premises they were buying, plaintiffs did not avail themselves of that right. Accordingly, plaintiffs did not report to defendants within the time prescribed by the contract any defect in the property. Plaintiffs thereby "accepted the property in its condition on the date of contract." There is no evidence that the property was not "on the possession date in substantially the same condition as on the contract date."

The trial court, in finding in favor of plaintiffs and entering money judgment against defendants, found to the contrary. As such, the trial court's finding and judgment is against the weight of the evidence. In making that determination, this court proceeds "with caution and with a firm belief that the ... judgment [as entered by the trial court] is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is reversed as to Count I and the case remanded with directions that the trial court enter judgment on Count I in favor of defendants. The judgment in favor of defendants as to Count II is affirmed.

CROW, P.J., and SHRUM, J., concur.