**SERVICE VENDING COMPANY, Plaintiff–Respondent,**

v.

**WAL–MART STORES, INC., Defendant–Appellant.**

**No. 24501.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 18, 2002.

Motion for Rehearing or Transfer to
Supreme Court Denied Dec. 2, 2002.

Application for Transfer Denied
Dec. 24, 2002.

Ann K. Covington, James F. Bennett, Bryan Cave LLP, St. Louis, Dennis Owens, Kansas City, Todd Guthrie, Bentonville, for Appellant.

James W. Newberry, Newberry, Haden, Cowherd, Bullock, Kekck & McGinnis, LLC, Springfield, for Respondent.

JOHN E. PARRISH, Judge.

Wal–Mart Stores, Inc., (Wal–Mart) appeals a judgment in favor of Service Vending Co. (SVC) in an action SVC brought for tortious interference with a business expectancy. SVC was awarded actual and punitive damages. Wal–Mart contends the trial court erred in denying its motions for directed verdict and judgment n.o.v. and in refusing to enforce a forum selection clause in a certain contract it had with SVC. Wal–Mart further alleges trial court error in submitting the issue of punitive damages to the jury. In the event punitive damages would be found properly submitted, Wal–Mart argues the trial court erred in refusing to enter remittitur of the amount of punitive damages the jury awarded. This court reverses and directs the trial court to enter judgment for Wal–Mart.

SVC conducts a business that owns and services novelty vending machines. SVC places its machines in various businesses. In 1985 Wal–Mart permitted SVC to place machines in stores Wal–Mart operated in Missouri, Nebraska, Iowa and Kansas. There were approximately 136 stores in those states in 1985. During the next 13 years, the number of Wal–Mart stores in those states increased to 444.

SVC compensated Wal–Mart by paying Wal–Mart a commission on sales the machines made. The commissions varied from 30% to 40% of gross sales on machines other than "Children's Miracle Network" machines. Seventy percent of gross sales from Children's Miracle Network machines were paid to Wal–Mart for that charity. The remaining 30% of Children's Miracle Network machines' sales was retained by SVC for product costs for items the machines dispensed.

In 1992 SVC and Wal–Mart entered into a written contract that prescribed the terms of their business dealings. The contract provided for Wal–Mart to receive 40% commission on "bulk vending" sales. It required a weekly record to be submitted to the store manager in each store in which machines were maintained. The report was to "indicate total sales minus sales tax leaving a balance on which the commission will be based." Commissions were to be paid weekly.

In 1998, Wal–Mart notified SVC that Wal–Mart was terminating the parties' relationship. After receiving the notification, SVC was contacted by a vendor that would be replacing it at some of the Wal–Mart stores, Store Service, Inc. (Store Service). Store Service inquired about purchasing equipment from SVC that was in place in Wal–Mart stores where Store Service would be placing machines. SVC sent a list of equipment for Store Service to consider.

Tyler Sumners, vice-president of SVC, asked Wal–Mart if it would allow SVC to have 60 days to remove its equipment from the Wal–Mart sites. In an undated letter to "Kent Reeves, Director, Other Income," Mr. Sumners acknowledged that SVC had received written notice that it would be required to remove its equipment from Wal–Mart stores within 30 days.[1] In addition to asking for additional time in which to remove the equipment, the letter stated SVC had considered selling its equipment to the vendor that would be replacing it. The letter stated, "We have received notice by phone, from those vendors that it is not an option for them, per Other Income directive, to buy said equipment on sight [sic]." SVC asked Mr. Reeves' "thoughts on this matter."

Kent Reeves replied by letter dated October 2, 1998. The letter was on Wal–Mart letterhead. Mr. Reeves is identified in the letter as "Director, Other Income." The letter to Mr. Sumners states:

I apologize for not making it clear that Wal–Mart did approve your request to extend the exit period from thirty days to sixty days. We do agree that sixty days would be reasonable as to not disrupt your other business.

I also want to clarify for you Wal–Mart's position on [SVC] selling your equipment to other operators. Wal–Mart will not get involved with the process. If you wish to sell the equipment to other operators, it is acceptable to us. We must insist that your people follow the procedures outlined and make a final collection and remove the equipment from our property. It is acceptable to Wal–Mart for the same equipment to be

---

1. Although the copy of SVC's letter that was admitted in evidence was undated, it appears to have been sent by fax. It bears a fax transmittal date of "OCT 01 '98."

installed on our property by the new operator.

Ultimately, Store Service declined to purchase SVC's equipment. Dan Clemson, president of Store Service, testified at trial by videotape deposition. He said his company made the decision not to purchase the equipment based on its cost. He was asked if Wal–Mart personnel told him it would be unwilling to allow SVC's equipment to be sold in place. Mr. Clemson answered, "Correct." He said he was told the equipment had to be removed from the Wal–Mart stores. Mr. Clemson was asked, "All right. And that would mean that for you to buy that equipment, it would be—have to be—be removed from each location and then some trax—transaction would have to take place off site for that equipment to be purchased and then brought back on site; is that correct?" He answered, "That's how I understand it."

SVC brought the action that is the subject of this appeal in the Circuit Court of Lawrence County, Missouri. SVC asserted Wal–Mart tortiously interfered with SVC's business expectancy of selling SVC's equipment to vendors that would be replacing it at Wal–Mart stores. SVC contended it had a valid expectation that it could sell its vending machines in place to Wal–Mart approved vendors that would replace SVC.

*Forum*

■ Wal–Mart's Point IV asserts the trial court erred in refusing to enforce a provision in its contract with SVC regarding forum selection.[2] The provision in

question is part of paragraph 12 of the parties' contract entitled, *"Termination."* It states:

> Wal–Mart may terminate this Agreement at any time. Upon notice to [SVC], either written or oral, all equipment belonging to [SVC] shall be removed from Wal–Mart property within ten (10) days of receiving written notice. All costs of such removal shall be the responsibility of [SVC]. In the event [SVC] fails to remove its equipment Wal–Mart may use any reasonable means necessary to free the space and charge [SVC] with all related costs. *In the event litigation arises between Wal–Mart and [SVC] due to this Agreement, it is expressly agreed that such dispute will be governed by the laws of and tried in the State of Arkansas.* [Emphasis added.]

■ Wal–Mart filed a motion to dismiss SVC's case prior to trial. The motion alleged SVC's action arose out of the written contract that contained the provision, "In the event litigation arises between Wal–Mart and [SVC] due to this Agreement, it is expressly agreed that such dispute will be governed by the laws of and tried in the State of Arkansas." The motion alleged that "[b]ecause the forum selection clause in this case must be enforced," the Missouri court in which the case was brought did not "have subject matter jurisdiction over this dispute, nor is [that] Court the proper venue." The trial court denied the motion concluding that the language in the contract between the parties on which Wal–Mart relied did not preclude this action from proceeding in a Missouri court because it was a tort claim.

2. "When the motion to dismiss is one for improper venue relating to a forum selection clause, it should be treated as an issue of jurisdiction. *Chase Third Century Leasing Co., Inc. v. Williams,* 782 S.W.2d 408, 411–12 (Mo.App.1989). Because the issue of whether

jurisdiction exists is a question of law, the appellate court reviews the issue independently on appeal. *Farris v. Boyke,* 936 S.W.2d 197, 200 (Mo.App.1996)." *Scott v. Tutor Time Child Care Systems, Inc.,* 33 S.W.3d 679, 682 (Mo.App.2000).

The trial court concluded the forum selection clause applied to contract claims, not to tort actions between the parties to the agreement. This court agrees.

Similar questions to the forum question presented in this case have been addressed in cases involving contracts with arbitration provisions. *Greenwood v. Sherfield,* 895 S.W.2d 169 (Mo.App.1995), involved an action for tortious interference with a contract. A contract for operation of a Sears catalog store between the Greenwoods and Sears, Roebuck and Company, (Sears) one of the defendants, had an arbitration clause that provided "[a]ny controversy or claims arising out of or relating to this Agreement ... shall be submitted to arbitration." *See Id.* at 171. The plaintiffs, Mr. and Mrs. Greenwood, contracted to sell their business to David Isaacson and Cindy Isaacson (the Isaacson contract). The proposed sale was contingent on the Isaacsons being approved by Sears as an authorized merchant. A representative of Sears told the Isaacsons that there would be a change in the merchant contract. The sale from the Greenwoods to the Isaacsons was not completed. The Greenwoods sued Sears and the representative who made the statement for tortious interference with the Isaacson contract alleging the agent had tortiously and maliciously procured the breach of the Isaacson contract.

The defendants in the Greenwoods' suit sought to compel arbitration of the tort claim based on an arbitration clause in the merchant contract between the Greenwoods and Sears. This court held the dispute presented in the tort claim was not within the scope of the contract that contained the arbitration provision; that, therefore, arbitration could not be compelled.

The language in the Greenwood—Sears contract was not unlike that in the Wal-Mart contract in this case insofar as identifying the issues which would not be submitted to Missouri courts. In *Greenwood,* the agreement provided that issues would be submitted to arbitration rather than litigation regarding "[a]ny controversy or claims arising out of or relating to [the Greenwood—Sears] Agreement." Here the Wal-Mart—SVC agreement provides litigation between the parties "due to this agreement ... will be ... tried in the State of Arkansas."

In finding the arbitration clause in *Greenwood* not applicable to the tort claim, an action for conversion, this court held that the relationship between the tort action and the contract pursuant to which Sears sought to invoke arbitration was not met "simply because the dispute would not have arisen absent the existence of the contract between the parties."[3] 895 S.W.2d at 174. The same rationale is apropos in assessing the enforceability of a contract's forum selection clause. Existence of a forum selection clause in a contract that requires contractual disputes to be litigated in Arkansas courts does not require tort claims between the same parties to be litigated in that jurisdiction absent concise language to that effect. A

---

**3.** Missouri courts are not alone in refusing to enforce contractual agreements beyond claims based on contract performance. In *Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566, 1568 (11th Cir.1984), a case interpreting an arbitration clause, the court observed, "While certainly there is a connection between Armada's claims and [a contractual] relationship between Armada and Interbulk—*i.e.,* but for the two parties having entered into this business arrangement which was imperfectly performed, there would have been no wrongful attachment and conversion—such connection is not sufficiently close to constitute a dispute arising during the execution, or performance, of the [contract] itself." *See also Dusold v. Porta–John Corp.,* 167 Ariz. 358, 807 P.2d 526, 530 (1990).

forum selection clause in a contract does not control the site for litigation of a tort claim simply because the dispute that produced the tort claim would not have arisen absent the existence of the contract.

SVC did not sue Wal–Mart on the basis of the parties' contract. SVC's lawsuit was based on allegations of misconduct by Wal–Mart that prevented an anticipated business transaction with third parties from occurring. Wal–Mart attempted to inject the forum selection clause of the parties' contract in the tort action by claiming Wal–Mart had a contractual right to take the action about which SVC complained. The litigation that embodied SVC's claim did not arise due to the parties' agreement. It arose on the basis of allegations that Wal–Mart unreasonably interfered with business negotiations between SVC and Store Service. The tort claim Wal–Mart was defending was not litigation that arose "due to [the parties'] Agreement." Point IV is denied.

### Wal–Mart's Motions for Directed Verdict and Judgment N.O.V.

Points I, II and III assert trial court error in denying motions for directed verdict and judgment n.o.v. Point I asserts SVC was required to prove absence of justification for Wal Mart's conduct; that SVC failed to do so. Wal–Mart argues it had an absolute legal right to act as it did under the terms of its contract with SVC; that it acted to protect its economic interests consistent with its contract rights. Consistent with its argument regarding Point I, Point II asserts SVC had no valid business expectancy to sell its machines in place without the requirement for the machines to be removed from the premises because of the terms of the contract between the parties. The issues raised in Points I and II are dependent on the same provision in the parties' contract.

*Birdsong v. Bydalek,* 953 S.W.2d 103 (Mo.App.1997), explains what is required to prove tortious interference with a business expectancy:

> Tortious interference with a contract or business expectancy requires proof of five elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages. *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404, 408[2] (Mo.App.1996) (citing *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. banc 1993); *Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n,* 796 S.W.2d 369, 372[4] (Mo. banc 1990)). To prevail on this tort claim, a party must adduce substantial evidence supporting each and every element. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 870 (Mo. App.1995).

*Id.* at 111.

"[T]he existence of a valid business expectancy will not be found where the facts showed a mere hope of establishing a business relationship which was tenuous." *Misischia v. St. John's Mercy Medical Center,* 30 S.W.3d 848, 863 (Mo.App. 2000). "In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with." *Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 438 (Mo. App.1998).

The parties' contract permitted Wal–Mart to terminate the agreement "at any time." Upon notice of termination being given by Wal–Mart, the contract

states, "[A]ll equipment belonging to [SVC] shall be removed from Wal–Mart property within ten (10) days of receiving written notice." Wal–Mart argues this supported the action it took in this case; that the contract permitted it to insist that the equipment be removed. For that reason, Wal–Mart asserts SVC failed to prove an absence of justification for Wal–Mart's conduct and, consequently, that SVC had no business expectancy of selling its machines in place without the machines having to be removed from Wal–Mart premises. Wal–Mart asserts, therefore, SVC failed to prove its claim for tortious interference of a business expectancy; that the trial court erred in denying Wal–Mart's motions for directed verdict and, subsequently, erred in denying Wal–Mart's motion for judgment n.o.v.

There was no evidence that Wal–Mart's position in its dealings with SVC varied from the rights it asserts it had under its contract with SVC. When SVC sought a longer time for removing its equipment than it was otherwise entitled under the contract and the demand previously made by Wal–Mart, Wal–Mart's representative, Kent Reeves, told SVC that Wal–Mart would not get involved with SVC's efforts to sell its equipment. Mr. Reeves advised SVC, "If you wish to sell the equipment to other operators, it is acceptable to us. We must insist that your people follow the procedures outlined and make a final collection and remove the equipment from our property." Mr. Reeves' letter added, "It is acceptable to Wal–Mart for the same equipment to be installed on our property by the new operator."

Upon termination of the contract by Wal–Mart, the contract provided for SVC's equipment to be removed. Any expectation by SVC that the property could be sold to another vendor without the requirement that the equipment be removed was contrary to the plain language of SVC's contract with Wal–Mart. Wal–Mart's insistence that there be compliance with contract terms regarding removal of equipment was justified. SVC had no valid business expectancy that it would be permitted to leave its equipment in place on Wal–Mart premises in conjunction with a sale of the equipment to a new vendor. Any hope that Wal–Mart would permit this to occur, contrary to the terms of the contract, was, at best, tenuous. SVC's claimed expectancy was, as a matter of law, neither reasonable nor valid in view of the terms of the contract.

Points I and II are valid. The trial court erred in denying Wal–Mart's motions for directed verdict and, having failed to grant those motions, in denying the subsequent motion for judgment n.o.v. As this court is compelled to reverse the judgment on these bases, Wal–Mart's remaining points require no discussion. The judgment is reversed. The case is remanded. The trial court is directed to enter judgment for Wal–Mart.

PREWITT, P.J., and RAHMEYER, C.J., concur.

## ON MOTION FOR REHEARING AND MOTION FOR TRANSFER

PER CURIAM.

Service Vending Company (SVC) filed motions for rehearing and for transfer. SVC subsequently filed an amended motion for rehearing. Based on the contract provision discussed in the opinion filed in this case, this court found that SVC failed to prove the element of lack of justification by Wal–Mart Stores, Inc. (Wal–Mart), in SVC's claim for tortious interference with a business expectancy. SVC suggests in its motions that another provision in its contract with Wal–Mart, a provision directed to "assignment or transfer of the

rights granted [SVC]," paragraph 11, afforded SVC the reasonable expectancy that it could sell its vending machines in place to the vendor Wal–Mart selected after Wal–Mart had terminated the contract with SVC. SVC argues that due to paragraph 11, Wal–Mart was without justification for requiring SVC's vending equipment to be removed if sold to a successor vendor.

The provision in the contract to which SVC refers relates to the assignment or transfer of vending rights by a vendor. It requires prior written consent of Wal–Mart in order for a vendor, in this instance SVC, to assign the vendor's contract rights. When there is such a transaction, the contract permits equipment that may be sold to the new vendor to remain on Wal–Mart property. That was not the situation in this case. In this case, Wal–Mart terminated SVC's contract. Paragraph 12 prescribes the rights of the parties when that occurs. It required all equipment that belonged to SVC to be removed. Upon terminating the agreement with SVC as permitted by the contract, Wal–Mart required SVC to comply with requirements of paragraph 12 of the contract. As stated in the opinion filed in this case, Wal–Mart's conduct was justified by this provision of its contract; thus, by reason of Wal–Mart's contractual rights, SVC failed to prove a valid business expectancy in that there was no showing of an absence of justification for Wal–Mart's actions.

Construction of a contract is a matter of law. *Stephens v. Brekke*, 977 S.W.2d 87, 94 (Mo.App.1998).

"Courts everywhere have repeatedly declared and applied the general rule that it is not within the province of the court to alter a contract by construction, or to make a new contract for the parties. It is unnecessary to cite cases to support the familiar rules that a court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and that a court may not read into a contract words which the contract does not contain."

*Smoot v. Hyde*, 855 S.W.2d 399, 403 (Mo. App.1993), quoting *Rickey v. New York Life Ins. Co.*, 229 Mo.App. 1226, 71 S.W.2d 88, 93 (1934). The contract in this case afforded Wal–Mart a defense to the action for tortious interference with a business expectancy brought by SVC. The other issues in the Motion for Rehearing and Motion for Transfer and the Amended Motion for Rehearing require no further discussion. The motions are denied.