Victoria **MAJOR, Appellant,**

v.

**Garrett Doyle MCCALLISTER and Kalupto Creations, L.L.C., Defendants,**

and

**ServiceMagic, Inc., Respondent.**

**No. SD 29871.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 23, 2009.

Motion for Rehearing or Transfer to Supreme Court Denied Jan. 14, 2010.

Application for Transfer Denied March 2, 2010.

Gregory W. Aleshire, William R. Robb, and Jessica L. Ward, Springfield, MO, for appellant.

Michael J. Patton and Jennifer A. Brodersen, Springfield, MO, for respondent.

DANIEL E. SCOTT, Chief Judge.

We consider an internet website's forum selection clause.

### Background

Appellant used ServiceMagic's website, which offered free referrals to prescreened construction contractors, to search for someone to remodel her Springfield, Missouri home. That website process involved a series of computer screens or web pages. Appellant entered project information on the first page, clicked to the next page, entered more information, and so on. Each page was hyperlinked[1] to ServiceMagic's terms and conditions (hereinafter "website terms") which included liability limitations and disclaimers, a Colorado choice of law provision, and a forum selec-

---

1. A hyperlink electronically provides direct access from one internet location/file to another, typically by clicking a highlighted word or icon. An online reference work, for example, may hyperlink words or terms in its text to their respective definitions.

tion clause limited to Denver County, Colorado.[2]

Appellant did not look at these terms while using the website. Eventually, a pop-up screen ("We're Matching Your Project to Top–Rated Pros in Springfield, MO") was followed by a new page stating that Appellant's project had been matched to four prescreened professionals. There were spaces for Appellant to enter her contact information, followed by a "Submit for Matching Pros" button. Next to the button was a blue hyperlink to the website terms and this notice: "By submitting you agree to the Terms of Use."

Still without checking the website terms, Appellant clicked the "Submit for Matching Pros" button and got a list which included co-defendants McCallister and Kalupto Creations. Appellant contracted with them, but later became dissatisfied and sued all defendants in Greene County, Missouri. Citing its forum selection clause, ServiceMagic was dismissed from the case and Appellant filed this appeal.[3]

■ We should honor the forum selection clause unless it is unfair or unreasonable to do so. *Burke v. Goodman*, 114 S.W.3d 276, 279–80 (Mo.App.2003)(citing *High Life Sales Co. v. Brown–Forman Corp.*, 823 S.W.2d 493, 497 (Mo. banc 1992)). The party resisting such a clause generally bears a heavy burden to show why it should not be held to its bargain.

*Id.* at 280 (citing *Whelan Sec. Co. v. Allen*, 26 S.W.3d 592, 596 (Mo.App.2000)).

Appellant raises two issues: (1) can she be said to have assented to the website terms; and (2) does the forum selection clause reach her tort claims? [4]

### Assent to Website Terms

■ Appellant denies assenting to the forum selection clause. She claims the notice of website terms was inadequate and no "click" was required to accept them. Her argument focuses on two types of electronic form agreements: "clickwraps" and "browsewraps." [5]

■ The legal effect of online agreements may be "an emerging area of the law," but courts still "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *Burcham v. Expedia, Inc.*, 2009 WL 586513, at *2 (E.D.Mo. Mar.6, 2009)(citing *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D.Pa.2007) and *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 28–30 (2d Cir.2002)).

Assent is manifested expressly on clickwrap sites, usually by clicking a box or button (*e.g.*, "I Agree"). *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 154–55 (Tex. App.2006). Courts routinely enforce clickwraps. *See U.S. v. Drew*, 259 F.R.D. 449, 462 n. 22 (C.D.Cal.2009); *Burcham*, 2009 WL 586513, at *2–3.

---

2. "You agree to submit to jurisdiction in Colorado and that any claim arising under these Terms and Conditions will be brought solely in a court in Denver County, Colorado."

3. *See* Missouri Court Rule 74.01(b) (2009). A dismissal without prejudice generally is not final or appealable because the claim can be refiled, but the practical effect of this ruling was to bar Appellant from litigating in her chosen forum state. *Burke v. Goodman*, 114 S.W.3d 276, 278–79 n. 4 (Mo.App.2003).

4. Appellant's points are not substantially in the form prescribed by Rule 84.04(d)(1), but we exercise our discretion to address her contentions as we understand them.

5. These terms seem to derive from software "shrinkwrap" licenses, which purport to become effective when a purchaser removes the cellophane shrinkwrap and opens the software package. *See Specht v. Netscape Communications Corp.*, 306 F.3d 17, 22 n. 4 (2d Cir.2002).

■ ServiceMagic's site was a browsewrap—*i.e.,* one where users need not "click" to accept the website terms. Instead, browsewraps indicate in some fashion that use of the site constitutes acceptance of its terms of service. *Drew,* 259 F.R.D. at 462 n. 22; *Burcham,* 2009 WL 586513, at *2–3. Courts usually uphold browsewraps if the user "has actual or constructive knowledge of a site's terms and conditions prior to using the site." *See Southwest Airlines Co. v. BoardFirst, LLC,* 2007 WL 4823761, at *5 (N.D.Tex. Sept.12, 2007), *quoted in Burcham,* 2009 WL 586513, at *3 n. 5 and *Hines v. Overstock.com, Inc.* 2009 WL 2876667, at *2 (E.D.N.Y. Sept.8, 2009).

Appellant criticizes ServiceMagic's use of a browsewrap instead of a clickwrap, and argues primarily from *Specht,* in which the plaintiffs downloaded free software from Netscape's website. The license terms (including an arbitration clause) were not referenced on the software download screen, but could be seen only by scrolling down to another screen. Since Netscape's browsewrap "did not carry an immediately visible notice of the existence of license terms," the court refused to enforce them. 306 F.3d at 31. The court emphasized this visibility problem by repeated references to "a screen located below the download button" (*Id.* at 20); "text that would have become visible to plaintiffs only if they had scrolled down to the next screen" (*Id.* at 23); that notice of the existence of license terms "on the next scrollable screen" was not enough for "inquiry notice" (*Id.* at 30); that an "unexplored portion" of text "remained below the download button" (*Id.* at 32); "license terms on a submerged screen" (*Id.*); and "terms hidden below the 'Download' button on the next screen" (*Id.* at 35).

■ By contrast, ServiceMagic *did* put "immediately visible notice of the existence of license terms"—*i.e.,* "By submitting you agree to the Terms of Use" and a blue hyperlink—right next to the button that Appellant pushed. A second link to those terms was visible on the same page without scrolling, and similar links were on every other website page. "Failure to read an enforceable online agreement, as with any binding contract, will not excuse compliance with its terms. A customer on notice of contract terms available on the internet is bound by those terms." *Burcham,* 2009 WL 586513, at *2 (internal citations and quotation marks omitted).

■ Appellant also cites clickwrap cases *Burcham* and *Feldman,* seemingly for the point that clickwraps are better for proving assent. Maybe so, but there is no fundamental reason "why the enforceability of the offeror's terms should depend on whether the taker states (or clicks) 'I agree.'" *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 403 (2d Cir.2004), *quoted in Burcham,* 2009 WL 586513, at *3. Even *Specht* indicates that "unambiguous manifestation of assent to license terms" may be unnecessary if there is "an immediately visible notice" of their existence. 306 F.3d at 31. *Cf. Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624 (Mo. banc 1997), which enforced a contractual jury waiver in part because it was "prominently displayed as the only and last paragraph on the last page immediately above the signature lines. Even if the defendant did not read the rest of the lease, it would be difficult to miss this provision when she signed the lease." *Id.* at 627.

> While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree.

*Register.com,* 356 F.3d at 403,[6] *quoted in Burcham,* 2009 WL 586513, at *3. Missouri recognizes this "standard contract doctrine." When one party accepts the other party's performance, it gives validity to an agreement even if unsigned, and imposes on the accepting party the obligations thereunder. *R.L. Hulett & Co. v. Barth,* 884 S.W.2d 309, 310 (Mo.App.1994).

For these reasons, Appellant's contention that the website terms were so inconspicuous that a reasonably prudent internet user could not know or learn of their existence, or assent to them without a "click," is unconvincing. Point denied.

### Forum Selection Clause and Tort Claims

■■■ Appellant also claims that "this Court held in *Service Vending Co. v. Wal–Mart Stores,* [93 S.W.3d 764 (Mo.App. 2002)], that such forum selection clauses apply only to contract claims, not tort actions" and that when "an action [is] in tort, any forum selection clause contained in the contract does not apply. *Id.* [at 767.]"

We did not so hold or establish any *per se* rule in *Service Vending,*[7] wherein we analogized forum selection clauses with the arbitration clause considered in *Greenwood v. Sherfield,* 895 S.W.2d 169 (Mo. App.1995), which we found not to reach the Greenwoods' tort claim. We would have enforced *Greenwood's* clause and compelled arbitration for tort claims arising "directly out of a dispute regarding the terms of the parties' contractual relation, or where the statements giving rise to a tort claim are integrally linked to the contractual relation between the parties." 895 S.W.2d at 174–75 (citation omitted).

However, the Greenwoods "neither invoke[d] nor need[ed] to invoke" contractual terms and conditions which had "no meaningful connection" to their tortious interference claim. *Id.* at 175. Since the statements giving rise to the tort claim were "independent of the contract terms" and did not "require reference to the underlying contracts," the arbitration clause did not apply. *Id.*

We made similar findings in *Service Vending.* "SVC did not sue Wal–Mart on the basis of the parties' contract." 93 S.W.3d at 769. Since the litigation "did not arise due to the parties' agreement," but because Wal–Mart allegedly interfered with the plaintiff's business dealings with a third-party, we affirmed the trial court's refusal to apply the forum selection clause. *Id.*

Appellant's claims differ from those in *Greenwood* and *Service Vending.* All three of her counts allege that ServiceMagic breached its website representations. Appellant's fraud and negligence claims repeatedly cite such representations and assert that ServiceMagic did not comply with them or properly prescreen the co-defendants as the website promised. Her final count alleges that ServiceMagic's website "employed deception, fraud, false promise, and misrepresentation" in violation of Missouri's Merchandising Practices Act.

■■■ Generally speaking, whether a forum selection clause that by its terms applies to contract actions also reaches non-contract claims "depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509,

---

6. Stated by the same Second Circuit that, two years earlier, decided the *Specht* case cited by Appellant.

7. Indeed, in dicta we indicated that tort claims would have been covered by "concise language to that effect" (93 S.W.3d at 768),

an observation too narrow to serve as a bright-line rule. For example, if a claim falls within the scope of a forum selection clause, it should not matter whether the clause is concise.

514 (9th Cir.1988)(forum selection clause reaches tort claims that "cannot be adjudicated without analyzing whether the parties were in compliance with the contract"), *cited in Travelers Prop. Cas. Co. v. Centimark, Corp.*, 2005 WL 1038842, at *2 (S.D.Ohio May 3, 2005) *and Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3738095, at *3 (M.D.Tenn. Nov.4, 2009). Such are Appellant's claims, which hinge upon and allege violations of ServiceMagic's website promises to prescreen any professionals that it referred to Appellant.

The essential issue here is the same as in many cases: Does the contract clause under consideration—be it arbitration, forum selection, or some other provision— apply to or reach the conduct or action in question? Although that answer was "no" in *Greenwood* and *Service Vending*, here it is "yes." Thus, we deny this point as well, and affirm the trial court's judgment of dismissal.

LYNCH, P.J., and RAHMEYER, J., concur.

NANCY STEFFEN RAHMEYER, Judge, concurs.

I concur in the result. The trial court, after conducting a hearing, found that the parties agreed to a venue provision.[1] We defer to the trial court's factual determinations, and as such I concur with the result that Appellant, in this case, assented to the website terms. Had the trial court found that Appellant did not assent to the terms, whether it had been a browsewrap or clickwrap, I would have deferred to that determination as well.

I write this separate opinion to note that the same contract principles hold on the internet. When the consumer is presented with a contract of adhesion containing lengthy provisions and hidden terms, I believe courts should consider whether the process of assent or terms of the contract are unconscionable.[2] Here, the dispute involves a forum-selection clause assented to by Appellant's use of a free service—terms that are not so onerous as to rise to the level of unconscionability; however, I do not want our opinion to indicate that consumers assent to any buried term that a website may provide simply by using the website or clicking "I agree."

---

**1.** While we were not provided with a transcript of the hearing and the judgment is devoid of factual findings, inherent in the judgment is the determination that Appellant had at least constructive notice of ServiceMagic's terms.

**2.** There are two aspects of unconscionability: procedural unconscionability and substantive unconscionability. Procedural unconscionability concerns the formalities of making the contract, while substantive unconscionability concerns the terms of the contract itself. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. banc 2006).