Bryan SCOTT, Joanne Scott and J & B Associates, Inc., Appellants,

v.

TUTOR TIME CHILD CARE SYSTEMS, INC. and Life Care Acquisition Corp ., Respondent,

Block XX, Respondents.

No. WD 57649.

Missouri Court of Appeals, Western District.

Submitted Sept. 8, 2000.

Decided Dec. 19, 2000.

Before HOLLIGER, P.J.,
BRECKENRIDGE and SMART, JJ.

SMART, Judge.

The appellants are Bryan Scott, Joanne Scott, and J & B Associates, Inc. They appeal the dismissal by the trial court of their petition against two affiliated Florida corporations on the basis that venue is governed by a forum selection clause in a franchise agreement with one of the corporations. Because we determine that policy considerations dictate that the forum selection clause should not be enforced in this case, we reverse the decision of the trial court and remand the case for further proceedings.

## Background

■ The following factual background is drawn from the pleadings. The facts pleaded in the petition are assumed to be true for purposes of reviewing the dismissal. *Evergreen National Corp. v. Killian Const. Co.*, 876 S.W.2d 633, 635 (Mo.App. 1994).

Joanne and Brian Scott formed J & B Associates, Inc. for the purpose of opening and operating a child care center near Missouri Highway 291 and 23rd Street in Independence. In 1995, J & B negotiated with a national child care franchisor, Tutor Time Child Care Systems, Inc. ("Tutor Time"), a Florida corporation. The parties eventually entered into a series of agreements, including a franchise agreement, and other agreements related to the development of a site and construction of a facility for a child care center. The agreements were designed to present J & B with a fully developed and constructed "ready-to-open" facility at the specified site. The agreements provided that the development of the site would be performed by Lifecare Acquisition Corporation ("Lifecare"), a corporation closely affiliated with Tutor Time.

At about the same time, Lifecare leased the undeveloped site from Block XX, a Missouri partnership, with the understanding that the lease would later be transferred to J & B. Several months later, Lifecare assigned the lease to J & B, and J & B assumed the lease obligations with the consent of Block XX. J & B notified the defendant corporations that the site did not provide adequate drainage and demanded that the site problems be corrected. Eventually, the center opened in September, 1996. However, due to continuing problems with flooding, lack of drainage and mildew, J & B closed the center in July, 1998. In November, 1998, the Scotts and J & B (all of which are hereafter collectively referred to as "the Scotts") brought an action in Jackson County against Tutor Time, Lifecare, and Block XX. Block XX (hereafter referred to as "Block") filed an answer and cross-claimed against Tutor Time and Lifecare.

In their petition, the Scotts contended that the Florida corporations (Tutor Time and Lifecare) breached the franchise agreement by wrongfully terminating the agreements, and breached the site development agreement by failing to provide a ready-to-open child care center, and breached the site coordination agreement by failing to provide a qualified site for the operation of the center. They further contended that all defendants breached the lease agreement by failing to construct a "turn-key" child care center, and by interfering with plaintiffs right to quiet enjoyment of the premises. They further contended that all defendants were guilty of: (a) negligent misrepresentation in communicating false information to the plaintiffs, (b) breach of implied covenant of good faith and fair dealing by dealing in bad faith, and (c) tortious interference with a business expectancy by including a breach of contracts with other defendants.

Block filed an answer, counterclaim and cross-claim. In its counterclaim, Block brought a claim for: (a) breach of contract for failure to make rental payments under the lease; (b) breach of contract for plaintiffs' failure to maintain the plumbing and sewage facilities within the leased premises, causing damage to the premises; (c) breach of contract for failure to maintain insurance on the leased premises, resulting in failure to repair damage to the premises; (d) conversion of property belonging to Block. For its cross-claim against Tutor Time and Lifecare, Block sought indemnity from those defendants to the extent plaintiffs were damaged, on the ground that Block had no active dealing with plaintiffs other than consenting for Lifecare to assign the lease to J & B, and that any damages sustained by plaintiffs were due to the actions of Tutor Time and Lifecare.

Tutor Time and Lifecare filed joint motions to dismiss the petition and the cross-claim based upon a provision in the franchise agreement and each of the related agreements specifying:

This agreement shall be governed by the laws of the State in which the Franchisee is domiciled at the time of execution hereof. The Franchisor and Franchisee acknowledge and agree that the U.S. District Court for the Southern District of Florida, or if such court lacks jurisdiction, the Seventeenth Judicial Circuit (or its successor) in and for Broward County, Florida, shall be the venue and exclusive forum in which to adjudicate any dispute arising either directly or indirectly, under or in connection with this Franchise Agreement....

The defendant corporations contended that pursuant to the express terms of the contract of the parties any such action could be brought only in Florida. The trial court, after consideration of the motions of defendant corporations, ruled that the forum selection clause was applicable, and accordingly dismissed the claims of the Scotts against the defendant corporations. The claim of the Scotts against Block remained pending. The court denied the motion to dismiss the cross-claim of Block against the defendant corpora-

tions, stating that such motion was rendered moot by the court's ruling on the other motion.

## Standard of Review

When reviewing a motion to dismiss, this court will treat all facts alleged as true and give the non-moving party the benefit of all reasonable inferences. deduced from the facts. *Evergreen,* 876 S.W.2d at 635. When the motion to dismiss is one for improper venue relating to a forum selection clause, it should be treated as an issue of jurisdiction. *Chase Third Century Leasing Co., Inc. v. Williams,* 782 S.W.2d 408, 411–12 (Mo.App.1989). Because the issue of whether jurisdiction exists is a question of law, the appellate court reviews the issue independently on appeal. *Farris v. Boyke,* 936 S.W.2d 197, 200 (Mo. App.1996).

## Analysis

The Scotts first contend that the trial court erred as to Defendant Lifecare in that the agreement entered into between Lifecare and J & B did not contain a forum selection clause. The Scotts contend that only a party to a contract may enforce the terms of the contract, citing authorities for that proposition. They overlook, however, the fact that their petition pleads that Lifecare and Tutor Time are "alter egos of each other, and that each is the agent of the other justifying that they be treated as one party." The trial court was presumably entitled on this motion to take the petition at face value. In any event, because of the disposition we reach as to Point II herein, we need not resolve the issue of whether Lifecare can benefit from a contract to which it was not explicitly a party.

In Point II, the Scotts contend the enforcement of the forum selection clause was error because the clause was both unfair and unreasonable. They contend that Missouri law dictates that it should not be enforced, citing *High Life Sales Company v. Brown–Forman Corp.,* 823 S.W.2d 493 (Mo. banc 1992). Prior to *High Life,* Missouri courts treated outbound forum selection clauses as *per se* violative of public policy. *Id.* at 495–96. In *High Life,* the Court decided that such clauses would no longer be considered *per se* unenforceable, and that they would be enforced when enforcement was not unfair or unreasonable. *Id.* at 496–97. In that case, the Court elected not to enforce such a clause in a liquor distribution agreement, because the State of Missouri retained a strong state interest in controlling liquor distribution in Missouri and in protecting licensed distributors from unjustified termination of their franchise. *Id.* at 498.

In *Chase Third Century Leasing Co.,* 782 S.W.2d 408 (Mo.App.1989), the court, in enforcing an inbound forum selection clause in a contract between a Missouri business and a Mississippi business, stated that the party resisting the forum selection clause has the burden of persuading the court that it should be released from the effect of the selection clause, and that it is not sufficient to simply assert a "lack of bargaining power." *Id.* at 411–12. The Scotts assert a lack of bargaining power, but they do not demonstrate that the contract was one of adhesion. They presented no evidence that the contract was an adhesion contract. On appeal they rely only on the fact that the contract is long and detailed, but present no authority for the proposition that every long and detailed contract must be presumed to be adhesive, even when there is no testimony that the contract was presented only as a "take it or leave it" proposition.

The Scotts also raise within Point II the argument that there are public policy reasons for avoiding application of the outbound forum selection clause in this case. The Scotts, apparently thinking of *High Life, supra,* argue that Missouri has an important state interest in safeguarding its children when foreign companies establish child care facilities within the state, and that therefore, as a matter of public

policy, the state should not enforce the forum selection clause. The Scotts' argument might be persuasive if this suit involved issues related to the interpretation of state child care regulations, or if foreign corporations were going to be operating a center. However, the pleadings do not suggest that either of the foregoing is true, nor did the Scotts offer any such evidence in the trial court.

Nevertheless, we note that there are certain policy considerations here militating against enforcement of the forum selection clause. In particular, while we note that the parties on appeal presume that Tutor Time and Lifecare were both dismissed *entirely* from these proceedings, including the dismissal of the cross-claim of Block against those Florida corporations, that is not the case. A closer look at the court's judgment shows that the court did not actually dismiss Block's claims against the Florida corporations. The court's judgment shows the trial court believed that the dismissal of the *Scotts'* claims against the Florida corporations somehow automatically mooted the cross-claims of Block against those corporations. We are not, however, aware of any reason that the dismissal of the Scotts' claims against the Florida corporations would eliminate the claims of Block against the Florida corporations. Nevertheless, the motion of the Florida corporations to dismiss the cross-claims of Block was *denied as moot*. Because the motion was not granted, Block was not "aggrieved" by the judgment within the meaning of § 512.020, RSMo 1994. Perhaps it is for this reason that Block has not appealed, recognizing

that it did not have anything to appeal. The statement of the trial court that the motion to dismiss the cross claims was made moot by the dismissal of the other claims was merely the expression of an opinion of the trial court, and was not an operative provision of the judgment. *See* 46 Am.Jur.2d, Judgments, § 6. Thus, in reality, the cross-claims of Block against the Florida corporations continue to pend before the trial court as do the Scotts' claims against Block.[1] The Florida corporations are therefore not entirely relieved of defending claims in Missouri by the forum selection clause; they are only partially so relieved. This gives rise to the policy factors here. Block will still litigate cross-claims against the Florida corporations here, and the Scotts will still litigate their claims against Block here. Where, as here, so much of the litigation will remain in Missouri, it would seem unreasonable to enforce the outbound forum selection clause and thereby require one aspect of this case-the Scotts' claims against the Florida corporations—to be resolved in Florida. To avoid duplication of effort, and to avoid potential problems of collateral estoppel or res judicata or inconsistent adjudications which could theoretically result from separating the trials of these related claims,[2] it makes sense to keep all the litigation here and it is unreasonable to do otherwise. We conclude, therefore, that the trial court erred in holding that the forum selection language, in this context, required dismissal of the claims of the Scotts against the Florida corporations.

Accordingly, we reverse the judgment of the trial court dismissing the Scotts' claims

---

1. In taking another look at whether the judgment is final for purposes of appeal, we conclude that because the trial court did dismiss the claims of the Scotts against the Florida corporations, and because it makes sense to treat that dismissal as final for purposes of appeal, and because the trial court did certify the judgment as final for purpose of appeal, pursuant to Rule 74.01(b), it is proper to exercise jurisdiction to review the dismissal of the claims of the Scotts against the Florida corporations.

2. Because the claim of Block XX would be a cross-claim for indemnity or contribution against the Florida corporations, that action would seek to establish the liability of the Florida corporations for any damages sustained by the Scotts and assessed to Block XX. This is the very issue to be tried in the action of the Scotts against the Florida corporations.

against Tutor Time and Lifecare and remand the case for further proceedings.

HOLLIGER and BRECKENRIDGE, JJ., concur.