In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 THIERET FAMILY, LLC, ET AL., ) No. ED109440
 )
 Appellants, )
 ) Appeal from the Circuit Court of
 vs. ) Perry County
 )
 DELTA PLAINS SERVICES, LLC, AND ) Honorable Scott A. Lipke
 JUSTIN A. BROWN, ADAM HORTON AND )
 MIKE STILL, )
 Respondents/Defendants. ) Filed: November 16, 2021

 Thieret Family, LLC (“Family”) and Dennis A. Thieret, Trustee of the Dennis A. Thieret

Revocable Trust dated January 27, 1998 (“Trustee”) (Family and Trustee are hereinafter

collectively “Appellants”) appeal from the judgment of the Circuit Court of Perry County, which

dismissed the claims they had brought against Delta Plains Services, LLC (“Delta”), Justin

Brown (“Brown”), Adam Horton (“Horton”), and Mike Still (“Still”) (Brown, Horton, and Still

are hereinafter collectively the “Individual Defendants,” while Delta and the Individual

Defendants are hereinafter collectively “Respondents”). In their Petition, Appellants alleged

fraud in the inducement in connection with their execution of two “finance agreements” with

Respondents. Appellants also alleged that Delta issued two bad checks in connection with the

transaction that were dishonored for insufficient funds, in violation of Missouri law.

 Appellants raise three points on appeal. In their first point, Appellants argue that the

circuit court erred in granting Respondents’ motion to dismiss their fraudulent inducement
claims against the Individual Defendants because they could not invoke the outbound forum

selection clauses contained in the finance agreements (which designated venue in Dallas County,

Texas) in that they are neither parties to nor third-party beneficiaries of the finance agreements.

In their second point, Appellants argue that the circuit court erred in granting Respondents’

motion to dismiss with respect to their fraudulent inducement claims because the forum selection

clauses in the finance agreements lack precise language requiring the litigation of those claims in

Dallas County, Texas, and the resolution of those claims does not involve the interpretation of

the finance agreements. In their third point, Appellants argue that the circuit court erred in

granting Respondents’ motion to dismiss their fraudulent inducement claims because

enforcement of the forum selection clauses would not be fair and reasonable in that they were

procured by fraud, and enforcement would result in the duplication of effort and the risk of

collateral estoppel, res judicata, or inconsistent adjudications.

 We affirm in part and reverse and remand in part.

 I. Factual and Procedural Background

 The following factual background is drawn from Appellants’ petition and other pleadings

where appropriate. The facts pleaded in the petition are assumed to be true for purposes of

reviewing the dismissal. Scott v. Tutor Time Child Care Sys., Inc., 33 S.W.3d 679, 680 (Mo.

App. W.D. 2000); Duvall v. Lawrence, 86 S.W.3d 74, 78 (Mo. App. E.D. 2002).

 On December 16, 2019, Appellants filed their four-count Petition in this matter in the

Circuit Court of Perry County (the “Petition”). In Counts I and II of their Petition, Family and

Trustee respectively alleged that, in May of 2018, they entered into separate “finance

agreements” with Delta (individually a “Finance Agreement” or collectively the “Finance

Agreements”) whereby they each agreed to pay Delta $150,000 (the “Financed Amount”) and in

 2
exchange Delta would acquire a “working interest” in certain real property owned by Appellants

in Louisiana, as well as be required to repay the Financed Amount, plus an interest payment of

$15,000, within ninety (90) days of each transaction, for a total repayment amount of $165,000

to each Appellant upon the maturity date of the Finance Agreements. Copies of the fully-

executed Finance Agreements were attached to the Petition as exhibits.

 The Petition also alleged that the Respondents, “acting in concert,” represented that Delta

was “ready, willing[,] and able” to perform under the Finance Agreements, but those

representations were false when made because Delta “had no intention of performing” the

Finance Agreements. Furthermore, Respondents knew that these representations were false

when they made them because “they knew Delta … would not and had no intention to perform

the … Finance Agreement[s].” In reliance on these false representations, each Appellant paid

Delta $150,000. In addition to other standard allegations supporting a fraud claim, the Petition

alleges that Family and Trustee were damaged in an amount in excess of $150,000.

 Each Finance Agreement also contains the following choice of law and forum selection

clause (the “Forum Selection Clause”):

 This Agreement shall be governed by and construed under the laws of the State of
 Texas. Any lawsuit or litigation arising under, out of, in connection with, or in
 relation to this Agreement, any amendment hereof, or the breach hereof, shall be
 brought in the courts of Dallas County, Texas[,] which courts shall have exclusive
 jurisdiction over any such lawsuit or litigation.

 Although Brown signed each Finance Agreement on behalf of Delta in his capacity as the

“Managing Member” thereof, he also separately signed each Financing Agreement as a personal

guarantor of Delta’s obligations thereunder.1 Although Horton and Still are also named as

1
 Paragraph 5 of each Financing Agreement, titled “FINANCING GUARANTY,” provides as follows: “Both Parties
agree and acknowledge that this Financing [Agreement] will be guaranteed by Justin A. Brown, Delta Plains, LLC,
and all Ownership Interest owned by both parties in the Texaco Cameron Property (See Exhibit B).” Although both
Finance Agreements contained an “Exhibit B” (which provided a description of the Texas Cameron Property),

 3
defendants in Counts I and II of the Petition, neither of them signed the Finance Agreements in

any capacity; rather, it appears that their involvement in these transactions was limited to

participating in the “solicitation” or inducement of Appellants to enter into the Finance

Agreements with Delta. Counts I and II of the Petition each sought damages from Delta and the

Individual Defendants, jointly and severally, in excess of $150,000, as well as punitive damages.

In Counts III and IV of the Petition, Appellants alleged that in August of 2019, Delta executed

two checks in the amount of $165,000 each, which were made payable to Family and Trustee

(collectively the “Checks”). Although not expressly alleged, the context clearly suggests that the

Checks were in repayment of the amounts due under the Finance Agreements. Regardless, when

Appellants presented the Checks for payment in Perry County, Missouri, they were both

dishonored because Delta lacked sufficient funds in its account at the time of presentment.

Although Appellants made demand on Delta for payment of the Checks, Delta failed to make

payment thereon. Counts III and IV of the Petition each sought damages from Delta in excess of

$150,000, plus pre-judgment interest.

 In March of 2020, Respondents filed a motion to dismiss the Petition on the basis of the

Forum Selection Clause (the “Motion to Dismiss”), arguing that Appellants’ claims in this matter

“fall squarely within the terms of the Finance Agreement[s] and Plaintiffs’ Petition relies on th[e]

Finance Agreement[s] as the basis for Counts I and II.” In the Motion to Dismiss, Respondents

further argued that, “the claims in Counts I and II are claims ‘arising under, out of, in connection

with, or in relation to th[e Finance Agreements],’” and thus, these claims “must be litigated in

Texas, not Missouri.” Although the Motion to Dismiss requested the dismissal of the entire

Petition, which also included the bad check claims in Counts III and IV, the Motion to Dismiss

neither these exhibits nor anything else in the record on appeal contain any further details regarding the nature of the
“Ownership Interest” in the Texaco Cameron Property.

 4
did not squarely address how or why the bad check claims were also subject to the Forum

Selection Clause.

 By “Judgment and Order” entered on August 14, 2020 (the “August 2020 Judgment”),

the circuit court dismissed Counts I and II of the Petition, reasoning, in part, as follows:

“[Appellants] consistently allege that [Respondents] were all intertwined and a part of the

transactions around the [Financing Agreements]. It is clear that [Appellants] intended that all of

the [Respondents] were intertwined and were involved in some way or another with the

[Financing Agreements].” However, regarding Counts III and IV, the circuit court further stated:

“It is clear from all of the arguments of the parties and from the Pleadings that the claims of

Counts III and IV were not involved or subject to the [Financing Agreements].” Thus, Counts III

and IV were not dismissed on the basis of the Forum Selection Clause.

 By “Final Order and Judgment” entered on January 19, 2021 (the “January 2021

Judgment”), the circuit court denied Appellants’ motion for reconsideration of the decision to

dismiss Counts I and II of the Petition, which essentially repeated the arguments originally raised

in the Motion to Dismiss, but added the argument that enforcement of the Forum Selection

Clause would be “unfair and unreasonable” pursuant to a case not previously cited. In the

January 2021 Judgment, the circuit court also granted Appellants’ motion for summary judgment

with respect to Counts III and IV of the Petition, and entered two separate judgments against

Delta and in favor of each Appellant in the amount of $172,568.30 each, plus post-judgment

interest in the amount of 9% per annum. Thus, by entry of the January 2021 Judgment, all

claims in the Petition were resolved by the circuit court and the matter was thereby ripe for

appeal.

 5
 Following the entry of the January 2021 Judgment, Appellants timely filed their notice of

appeal with respect to the dismissal of Counts I and II of the Petition, and this appeal followed.2

 II. Standard of Review

 “Review of a circuit court’s order granting a motion to dismiss is de novo.” Reed v.

Reilly Co., LLC, 534 S.W.3d 809, 811 (Mo. banc 2017) (quoting Gibbons v. J. Nuckolls, Inc.,

216 S.W.3d 667, 669 (Mo. banc 2007)). “In reviewing the court’s grant of a motion to dismiss,

we accept all properly pleaded facts as true, give them a liberal construction, and draw all

reasonable inferences which are fairly deducible from the pleaded facts.” Duvall, 86 S.W.3d at

78. When the circuit court does not specify reasons for dismissing a petition, we presume that

the circuit court’s judgment is based on one of the reasons stated in the motion to dismiss. Reed,

534 S.W.3d at 811. “If the dismissal is justified on any ground included in the motion to

dismiss, the circuit court’s judgment will be affirmed.” Cope v. Parson, 570 S.W.3d 579, 581

(Mo. banc 2019); accord Burke v. Goodman, 114 S.W.3d 276, 279 (Mo. App. E.D. 2003) (“We

must affirm the dismissal if it can be sustained on any ground supported by the motion to

dismiss, regardless of whether or not the trial court relied on that ground.”).

 III. Discussion

 As noted above, Appellants raise three points on appeal relating to the circuit court’s

dismissal of their fraudulent inducement claims (Count I and II of the Petition) on the basis of

the Forum Selection Clause in the Finance Agreements. We address each point in turn below.

2
 We note that although the August 2020 Judgment dismissing Counts I and II did not specify whether the dismissal
was with or without prejudice, it is deemed to be without prejudice pursuant to Rule 67.03. We further note that
“[g]enerally a dismissal without prejudice is not a final judgment because the party may re-file the cause of action,
and thus it is not appealable.” Burke v. Goodman, 114 S.W.3d 276, 278 n.4 (Mo. App. E.D. 2003). However,
because the circuit court’s dismissal of Counts I and II bars Appellants from refiling their fraudulent inducement
claims in Missouri, and thus has the practical effect of terminating the litigation of those claims in Appellants’
chosen forum, it is appealable. Id.; see also Reed, 534 S.W.3d at 811 n.2; Whelan Sec. Co. v. Allen, 26 S.W.3d 592,
595 (Mo. App. E.D. 2000).

 6
 A. Point I

 In their first point on appeal, Appellants argue that the circuit court erred in dismissing

their fraudulent inducement claims against the Individual Defendants because they cannot invoke

the Forum Selection Clause in that they are neither parties to nor third-party beneficiaries of the

Finance Agreements.

 Although it is undisputed that Brown executed each Finance Agreement on behalf of

Delta (as the “Managing Member” thereof) and as a personal guarantor of Delta’s obligations

thereunder, it is also undisputed that neither Horton nor Still executed either Finance Agreement

in any capacity. Rather, their involvement in these transactions was limited to participating in

the “solicitation” or inducement of Appellants to enter into the Finance Agreements with Delta.3

These key allegations framed the circuit court’s analysis of Appellants’ argument with respect to

the Individual Defendants’ authority to enforce the Forum Selection Clause, and they likewise

frame our analysis of Appellants’ first point on appeal.

 In the August 2020 Judgment, the circuit court briefly addressed Appellants’ argument

raised in their response to the Motion to Dismiss that the Individual Defendants cannot enforce

the Forum Selection Clause, stating as follows:

 [I]n a close reading of the pleadings filed by the Plaintiffs, the Plaintiffs
 consistently allege that [Respondents] were all intertwined and a part of the
 transactions around the [F]inancing [A]greement[s]. It is clear that the Plaintiffs
 intended that all of the defendants were intertwined and were involved in some
 way or another with the [F]inancing [A]greement[s].

3
 In their briefing to this Court, Appellants specifically stated that although the Petition’s exhibits refer to Brown as
the Managing Member of Delta Plains, “the Petition does not allege the nature of the relationship between Horton,
Still, and Delta Plains.” It is not clear whether this is because Appellants simply did not know the nature of their
relationship or whether this was a strategic pleading decision to omit any such allegations. Although the parties will
presumably have their “day in court” (whether in Missouri or Texas) to present available evidence regarding the
relationship of Horton and Still to Delta, we are limited to reviewing the allegations contained in the Petition on
appeal of a motion to dismiss. See L.C. Development Co. v. Lincoln County, 26 S.W.3d 336, 339 (Mo. App. E.D.
2000) (recognizing that, “[i]n ruling on a motion to dismiss, the trial court can only consider the pleadings, and
appellate review is also limited to the pleadings”). Therefore, we cannot speculate what that relationship might be.

 7
On this basis, the circuit court not only dismissed Counts I and II as to Delta and Brown, but also

as to Horton and Still.

 However, Missouri law is clear that “only parties to a contract and any third-party

beneficiaries of a contract have standing to enforce that contract.” Verni v. Cleveland

Chiropractic Coll., 212 S.W.3d 150, 153 (Mo. banc 2007).4 Specifically, “[t]o be bound as a

third-party beneficiary, the terms of the contract must clearly express intent to benefit that party

or an identifiable class of which the party is a member.” Nitro Distrib., Inc. v. Dunn, 194

S.W.3d 339, 345 (Mo. banc 2006). “In cases where the contract lacks an express declaration of

that intent, there is a strong presumption that the third party is not a beneficiary and that the

parties contracted to benefit only themselves.” Id. “Furthermore, a mere incidental benefit to the

third party is insufficient to bind that party.” Id.

 In support of their enforcement argument with respect to the Individual Defendants,

Appellants primarily rely on this Court’s prior decision in Jones v. Paradies, 380 S.W.3d 13

(Mo. App. E.D. 2012). In Jones, we held that several individual defendants, who did not sign the

underlying contract between the plaintiff and the corporate defendant in their individual

capacities, could not enforce the arbitration clause contained therein. Id. at 17-18. Although the

4
 Appellant has argued, in this Court and below, that the Individual Defendants lack “standing” to enforce the forum
selection clause. This choice of wording finds support in precedent, such as Verni v. Cleveland Chiropractic
College, 212 S.W.3d at 153, in which courts have discussed a party’s “standing” to enforce a contract. However,
this use of the term “standing” is distinct from standing as a general concept of justiciability. In the justiciability
sense, the standing analysis concerns whether the party seeking relief has “some personal interest at stake in the
dispute, even if that interest is attenuated, slight or remote.” Ste. Genevieve School District R-II v. Bd. of Aldermen
of City of Ste. Genevieve, 66 S.W.3d 6, 10 (Mo. banc 2002). Courts must evaluate whether a party has standing in
the justiciability sense prior to addressing the substantive issues in a case. Verni, 212 S.W.3d at 153. Although
“standing,” as that term has been used in the context of contractual interpretation, is similar, a court necessarily
addresses the substantive issues before it when it determines whether an individual is a party to the contract. That
inquiry must focus on the intention of the parties to the contract and not on whether a party has a general interest in
the subject matter. Standing, as that term has been used in the context of contracts (in particular with respect to
arbitration and forum selection clauses), is more appropriately considered an issue of enforceability of a contract
based on the intention of the parties. For these reasons, we have opted to eliminate the use of the term “standing” in
this opinion in an effort to eliminate any confusion. We have used the term in quotations of precedent only, but such
uses of the term should not be considered to imply issues of justiciability.

 8
individual defendants had signed the contract in their capacities as directors of the corporate

defendant, they were only being sued in their individual capacities for tortious interference with

a contract and conspiracy, not for breach of contract. Id. at 15-16.

 In support of our holding in Jones, we recognized that “[a]rbitration is fundamentally a

matter of consent, and thus a party cannot be required to arbitrate a dispute that it has not agreed

to arbitrate.” Id. at 17 (citing State ex rel. Union Pacific R.R. Co. v. David, 331 S.W.3d 666, 667

(Mo. banc 2011)). We also noted that “[i]t is a firmly-established principle that parties can be

compelled to arbitrate against their will only pursuant to an agreement whereby they have agreed

to arbitrate claims.” Id. (citing M & I Marshall & Ilsley Bank v. Sader & Garvin, L.L.C., 318

S.W.3d 772, 777 (Mo. App. W.D. 2010)). Thus, we further noted that, “it logically follows that

one cannot enforce an arbitration agreement if he is not a party to that agreement.” Id. (citing

Springfield Iron & Metal, LLC v. Westfall, 349 S.W.3d 487, 490 (Mo. App. S.D. 2011)).

 Appellants also cited Springfield Iron & Metal, LLC v. Westfall, 349 S.W.3d at 487, in

which the Southern District of this Court held that non-signatories to a contract likewise could

not enforce an arbitration clause therein, even though they arguably had a “close relationship”

with one of the parties to the subject contract. In this regard, Westfall specifically noted that

“[t]o compel arbitration of non-signatory claims—even those ‘inextricably intertwined’ with

signatory claims—‘is inconsistent with the overarching rule that arbitration is ultimately a matter

of agreement between the parties.’” Id. at 490 (quoting Netco, Inc. v. Dunn, 194 S.W.3d 353,

361-62 (Mo. banc 2006); Nitro, 194 S.W.3d at 351). As discussed in our analysis of Appellants’

second point on appeal below, forum selection clauses are likewise a matter of agreement

between two or more consenting parties. Furthermore, as discussed in our analysis of

Appellants’ third point on appeal below, Westfall also addressed the non-signatories’ argument

 9
that they should nonetheless be permitted to enforce the arbitration clause in the subject contract

for the sake of convenience and judicial economy.

 We agree with Appellants that Jones and Westfall control our analysis of their first point

on appeal.5 Therefore, because Delta was clearly a signatory of each Finance Agreement (by and

through its “Managing Member,” Brown), it may enforce the Forum Selection Clause against

Appellants. In addition, because Brown was also a signatory of each Finance Agreement in his

individual capacity (as a personal guarantor of Delta’s obligations thereunder), he likewise may

enforce the Forum Selection Clause against Appellants. However, Horton and Still present a

different case because they are clearly non-signatories of the Finance Agreements in any

capacity. In fact, as noted above (see also supra footnote 3), the Petition contains no allegations

regarding any relationship—direct or indirect—between Delta, on the one hand, and Horton and

Still on the other. Therefore, under Jones and Westfall, Horton and Still cannot enforce the

Forum Selection Clause against Appellants because Appellants simply did not agree to litigate

any claims with Horton or Still in a designated forum, as they did with Delta and Brown.

Furthermore, as Appellants argued in their briefing to the circuit court and to this Court, Horton

and Still are not third-party beneficiaries of the Finance Agreements. Respondents, however,

5
 We recognize that both Jones and Westfall involve an analysis of arbitration clauses (rather than forum selection
clauses). However, this distinction does not matter for purposes of analyzing the various issues raised in this appeal
because Missouri courts have repeatedly treated contractual arbitration and forum selection clauses the same
because they are, for all practical purposes, the same type of agreement. For example, in Service Vending Co. v.
Wal-Mart Stores, Inc., 93 S.W.3d 764 (Mo. App. S.D. 2002), a case involving the enforcement of a contractual
forum selection clause, the Southern District of this Court analyzed and heavily relied upon a Missouri case
involving a contractual arbitration provision—Greenwood v. Sherfield, 895 S.W.2d 169 (Mo. App. S.D. 1995)—and
specifically stated that the court’s rationale in Greenwood “was apropos in assessing the enforceability of a
contract’s forum selection clause.” 93 S.W.3d at 768. The Southern District of this Court in Major v. McCallister,
302 S.W.3d 227, 232 (Mo. App. S.D. 2009), similarly observed that for purposes of analyzing whether a contractual
arbitration or forum selection clause applies to or reaches certain conduct or actions, the analysis is essentially the
same for both types of provisions. Furthermore, the Supreme Court of Missouri has specifically recognized that
“[a]n arbitration clause is simply a particular type of forum selection clause.” Dunn Indus. Grp., Inc. v. City of
Sugar Creek, 112 S.W.3d 421, 432 (Mo. banc 2003). We agree that Missouri cases addressing the enforceability of
contractual arbitration provisions are generally instructive in analyzing the enforceability of contractual forum
selection clauses, given the similar purposes they serve in any type of contract.

 10
have not even attempted to argue that Horton and Still are third-party beneficiaries of the

Finance Agreements. We agree that Horton and Still are not third-party beneficiaries of the

Finance Agreements in general, nor to the Forum Selection Clause in particular, because the

Finance Agreements do not clearly express an intent to benefit Horton and Still individually or

any class of persons of which they are a member. Nitro, 194 S.W.3d at 345.

 Appellants’ first point on appeal is granted in part and denied in part.

 B. Points II and III

 Because the law governing Appellants’ second and third points on appeal is closely inter-

related, we address these two points together.

 In their second point, Appellants argue that the circuit court erred in dismissing their

fraudulent inducement claims against all Respondents because the Forum Selection Clause lacks

precise language requiring the litigation of those claims in Dallas County, Texas, and the

resolution of those claims does not involve the interpretation of the Finance Agreements. In their

third point, Appellants argue that the circuit court erred in dismissing their fraudulent

inducement claims against all Respondents because enforcement of the Forum Selection Clause

would not be fair and reasonable in that it was procured by fraud, and enforcement would result

in the duplication of effort and the risk of collateral estoppel, res judicata, or inconsistent

adjudications. However, before analyzing the merits of these two points, a review of Missouri

law addressing forum selection clauses is warranted.

 “Parties to a contract may agree in advance to submit to personal jurisdiction in a given

court by means of a forum selection clause.” Jitterswing, Inc. v. Francorp, Inc., 311 S.W.3d

828, 830 (Mo. App. E.D. 2010).6 “A forum selection clause of a contract selects the venue in

6
 We acknowledge that the Finance Agreements contain a choice of law provision stating that it is “governed by and
construed under the laws of the State of Texas.” However, in Missouri, “forum selection clauses are … procedural,

 11
which a cause of action is to be tried.” Burke, 114 S.W.3d at 279. “An inbound forum selection

clause provides for trial inside Missouri,” whereas “[a]n outbound forum selection clause

provides for trial outside of Missouri.” Id. (citing High Life Sales Co. v. Brown-Forman Corp.,

823 S.W.2d 493, 495 (Mo. banc 1992)). Although Missouri courts previously voided outbound

forum selection clauses as per se violations of public policy, the Supreme Court of Missouri in

High Life Sales Co. v. Brown-Forman Corp., held that this type of forum selection clause should

no longer be voided on that basis by Missouri courts. 823 S.W.2d at 496-97; see also Burke, 114

S.W.3d at 279 (recognizing that High Life Sales changed the law regarding the enforcement of

outbound forum selection clauses in Missouri). Rather, “an outbound forum selection clause

should be enforced unless it is unfair or unreasonable to do so.” Burke, 114 S.W.3d at 279-80

(citing High Life Sales, 823 S.W.2d at 497); see also Major v. McCallister, 302 S.W.3d 227, 229

(Mo. App. S.D. 2009).

 “Once a party seeking to dismiss shows the existence of a forum selection clause, the

burden then shifts to the non-moving party to demonstrate that enforcement of the clause would

be unjust or unreasonable.” State ex rel. J.C. Penny Corp. v. Schroeder, 108 S.W.3d 112, 113

(Mo. App. E.D. 2003); see also Jitterswing, 311 S.W.3d at 830. Specifically, “[t]he party

resisting enforcement of the forum selection clause bears a heavy burden in convincing the court

that he or she should not be held to the bargain.” Burke 114 S.W.3d at 280 (citing Whelan Sec.

not substantive in nature.” Peoples Bank v. Carter, 132 S.W.3d 302, 305 (Mo. App. W.D. 2004); see also Reed, 534
S.W.3d at 809 (applying Missouri law to determine the validity of a forum selection clause even though the contract
had a choice of law provision stating that Kansas law governs the agreement). But see Raydiant Technology, LLC v.
Fly-N-Hog Media Group, Inc., 439 S.W.3d 238, 240 (Mo. App. S.D. 2014) (recognizing that when “the case turns
on the enforcement of a forum-selection clause, and the contract includes a choice-of-law provision, the law chosen
by the parties controls the interpretation of the forum-selection clause” (quoting Hope’s Windows, Inc. v. McClain,
394 S.W.3d 478, 482 n.3 (Mo. App. W.D. 2013)). However, because Reed v. Reilly Co., LLC, is a decision of our
Supreme Court, we follow its teaching over the rule announced by the Southern District of this Court in Raydiant.
Accordingly, Missouri law governs our interpretation of the Forum Selection Clause in the Finance Agreements,
notwithstanding a choice of law provision that applies the substantive law of Texas to the remainder of these
agreements.

 12
Co. v. Allen, 26 S.W.3d 592, 596 (Mo. App. E.D. 2000)). “Whether … the party presented

sufficient evidence to show that enforcement of the clause would be unfair or unreasonable is a

question of law that we review independently on appeal.” Id. (citing Whelan Sec. Co., 26

S.W.3d at 595).

 “However, the existence of a forum selection clause in a contract that requires contractual

disputes to be litigated in a specific forum, does not require tort claims between the same parties

to be litigated in that forum absent precise language to that effect.” Jitterswing, 311 S.W.3d at

830 (emphasis added). In addition, “whether a forum selection clause that by its terms applies to

contract actions also reaches non-contract claims depends on whether resolution of the claims

relates to interpretation of the contract.” Reed, 534 S.W.3d at 811 (quoting Major, 302 S.W.3d

at 231 (alteration removed and internal quotation marks omitted)). “Further, a forum selection

clause in a contract does not control the site for litigation of a tort claim simply because the

dispute that produced the tort claim would not have arisen absent the existence of a contract.”

Jitterswing, 311 S.W.3d at 830 (citing Service Vending Co. v. Wal-Mart Stores, Inc., 93 S.W.3d

764, 769 (Mo. App. S.D. 2002)).

 In this case, Appellants have primarily relied on this Court’s decision in Jitterswing, Inc.

v. Francorp, Inc., for their argument that the Forum Selection Clause does not govern its

fraudulent inducement claims in Counts I and II of the Petition, as raised in their first point on

appeal.

 In Jitterswing, we held that the following forum selection clause in the parties’ franchise

development program agreement did not apply to the plaintiff’s statutory tort claim for the

practice of law without a license pursuant to § 484.020, RSMo Cum. Supp. 2017: “[T]he parties

agree that any dispute arising under this Agreement shall be resolved in the state or federal

 13
courts, within the state of Illinois, and each party expressly consents to jurisdiction therein.” 311

S.W.3d at 830. Without significant explanation, we ultimately reversed the circuit court’s

dismissal of the plaintiff’s petition on the basis of the foregoing forum selection clause.

 However, we find Jitterswing unpersuasive for two reasons. First, the forum selection

clause in Jitterswing was much narrower than that in this case, as the Jitterswing clause only

governed “any dispute arising under this Agreement.” Id. (emphasis added). Thus, we held that

this clause “was not specific enough to encompass the tort claim for the practice of law without a

license.” Id. at 831. In contrast, the Forum Selection Clause in this case governs “[a]ny lawsuit

or litigation arising under, out of, in connection with, or in relation to this Agreement, any

amendment hereof, or the breach hereof….” Thus, because the Forum Selection Clause not only

encompassed claims “arising under” the subject agreement (like in Jitterswing), but also

included claims “[arising] out of,” “in connection with,” or “in relation to” the subject

agreement, its reach is far greater than the forum selection clause in Jitterswing. Accordingly,

we conclude that even if Appellants’ fraudulent inducement claims do not “arise under” the

Finance Agreements, they certainly “[arise] out of,” are “connect[ed] with,” and “relat[e] to” the

Finance Agreements. In short, we find that this language in the Forum Selection Clause was

broad enough to encompass Appellants’ common law fraudulent inducement claims under the

specific facts of this case.

 Second, Jitterswing is distinguishable because the underlying claim in that case was a

statutory claim for the practice of law without a license pursuant to § 484.020. In this case,

however, Appellants’ claims are for fraudulent inducement with respect to the Finance

Agreements. This distinction is important because, in Jitterswing, we held that enforcing the

forum selection clause “would create an unfair result.” Id. (citing Burke, 114 S.W.3d at 279-80).

 14
Specifically, we recognized that if the plaintiff was required to bring its statutory claim in the

parties’ designated forum (i.e., Illinois), the plaintiff “would be without recourse, as this is a tort

claim created by Missouri statute, and the courts of Illinois would be without jurisdiction.” Id.

Here, however, Appellants would suffer no such risk, as the dismissed counts of the Petition are

common law claims for fraudulent inducement, which is also a recognized cause of action in

Texas. See, e.g., Anderson v. Durant, 550 S.W.3d 605, 614 (Tex. 2018). Therefore, unlike the

plaintiff in Jitterswing, Appellants will not be “without recourse” by our enforcement of the

Forum Selection Clause, which will now require them to bring their common law fraudulent

inducement claims against Delta and Brown in Texas rather than Missouri. For these reasons,

Jitterswing is inapposite and does not compel reversal of the circuit court’s decision to dismiss

Counts I and II of the Petition on the basis of the Forum Selection Clause.

 Our analysis of Appellants’ second point on appeal is also governed by the general rule

that in order for a forum selection clause to encompass any “non-contract claims,” the resolution

of any such claim must “relate[] to interpretation of the contract.” Reed, 534 S.W.3d at 811.

With respect to the enforcement of arbitration clauses, which are treated like forum selection

clauses (see supra footnote 5), Missouri courts have similarly recognized as follows: “At the

very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must

raise some issue the resolution of which requires reference to or construction of some portion of

the parties’ contract.” Riley v. Lucas Lofts Investors, LLC, 412 S.W.3d 285, 291 (Mo. App. E.D.

2013) (quoting Nw. Chrysler-Plymouth, Inc. v. DaimlerChrysler Corp., 168 S.W.3d 693, 696

(Mo. App. E.D. 2005)). Riley further noted that, “[w]here a tort claim is independent of the

contract terms and does not require reference to the underlying contract, arbitration is not

compelled.” Id. (quoting Nw. Chrysler Plymouth, 168 S.W.3d at 696). Finally, Riley noted that

 15
“a party’s tort claim is subject to arbitration only if resolution of the claim requires reference to

or construction of the parties’ contract.” Id. at 291-92. It also bears repeating that the party

resisting enforcement of a forum selection clause “bears a heavy burden in convincing the court

that he or she should not be held to the bargain.” Burke 114 S.W.3d at 280; see also Whelan Sec.

Co., 26 S.W.3d at 596.

 In this case, the essence of Counts I and II of the Petition is that Respondents fraudulently

induced Appellants to enter into the Finance Agreements. Therefore, although these claims do

not rely on any specific provisions of the Finance Agreements or allege a breach thereof, the trier

of fact will nonetheless be required to generally reference and/or interpret the terms of the

Finance Agreements in ultimately resolving these claims, even if the trier of fact is not called

upon to determine whether Delta actually breached the terms of the Finance Agreements.

 In further support of their argument that the Forum Selection Clause does not govern its

fraudulent inducement claims, Appellants have also cited to this Court’s decision in Riley, where

we addressed whether an arbitration provision in a condominium purchase agreement applied to

the plaintiff’s various tort claims, including a claim for fraudulent inducement, against several

defendants in connection with the sale of condominium units. 412 S.W.3d at 288-89. Riley

initially noted that “[w]hether a dispute is covered by an arbitration clause is relegated to the

courts as a matter of law and is to be determined from the contract entered into by the parties.”

Id. at 290-91 (quoting Greenwood, 895 S.W.2d at 174). Riley further noted that in making this

determination, courts should apply “the usual rules of state contract law and canons of contract

interpretation.” Id. at 291 (quoting Nitro, 194 S.W.3d at 345). More to the point, Riley noted

that, “[a]bsent a clear, explicit statement in the contract directing an arbitrator to hear and

determine the validity of tort damage claims by one party against another, it must be assumed

 16
that the parties did not intend to withdraw such disputes from judicial authority.” Id. (quoting

Greenwood, 895 S.W.2d at 174). In this regard, Riley further noted that for a tort claim to be

subject to a broad arbitration clause, it must raise some issue that requires referencing or

construing some portion of the parties’ contract. Id. However, arbitration is not compelled

where the tort claim is independent of the underlying contract terms and does not require

referencing the same. Id.

 With this legal backdrop in Riley, we proceeded to analyze whether the plaintiff’s tort

claims were subject to the following arbitration clause: “In the event that after Closing, any

disputes or disagreements between Seller and Purchaser arise with respect to the construction of

Unit [sic] sold hereunder and/or this Contract (collectively, ‘Disputes’), then in any such event

the Disputes shall be submitted to binding arbitration for resolution and determination.” Id.

(emphasis and alteration in original). In ultimately holding that the plaintiff’s tort claims (which

included a claim for fraudulent inducement) were not subject to the arbitration clause, we

summarized as follows:

 Plaintiff did not assert any breach of contract claims against Defendants. Instead,
 Plaintiff asserted tort claims of fraud, negligent misrepresentation, fraudulent
 inducement, and breach of the Missouri Merchandising Practices Act based on
 Defendants’ allegedly false representations about the building’s leaking roof.
 Although Plaintiff referenced the contract in his petition and attached it as an
 exhibit, he did not rely on any provision of the contract as a basis for liability.

Id. (citing Nw. Chrysler-Plymouth, 168 S.W.3d at 697). We further noted that, “a party cannot

avoid the language of an arbitration provision by casting its complaint in tort.” Id. (citing Estate

of Athon v. Conseco Fin. Servicing Corp., 88 S.W.3d 26, 30 (Mo. App. W.D. 2002)). However,

in Riley we re-affirmed the general rule that, “a party’s tort claim is subject to arbitration only if

resolution of the claim requires reference to or construction of the parties’ contract.” Id. at 291-

92 (citing Nw. Chrysler-Plymouth, 168 S.W.3d at 696).

 17
 Although Riley arguably presents a closer case than Jitterswing because the plaintiff in

Riley asserted several common law tort claims, including a claim for fraudulent inducement

(rather than a statutory claim for the practice of law without a license), we also find Riley

unpersuasive because the arbitration clause at issue in that case was still very similar to the

relatively narrow forum selection clause in Jitterswing. Specifically, the arbitration clause in

Riley only governed disputes or disagreements “with respect to” the parties’ underlying contract.

Id. at 291. However, the Forum Selection Clause in this case more broadly covers lawsuits or

litigation “arising under,” “[arising] out of,” “in connection with,” or “in relation to” the Finance

Agreements. In addition, Appellants’ fraudulent inducement claims specifically relate to the

Finance Agreements. Further, because Appellants are claiming that their damages are the same

as what they would have received had the Finance Agreements been fully performed, Appellants

are effectively suing in tort to enforce the Finance Agreements. Accordingly, Appellants’

fraudulent inducement claims will necessarily require resort to the Finance Agreements because

their measure of claimed damages is full performance. For these reasons, we find that Riley is

inapposite and does not compel reversal of the circuit court’s decision to dismiss Counts I and II

on the basis of the Forum Selection Clause.

 We also briefly note that Respondents have cited the Southern District’s decision in

Major v. McCallister, 302 S.W.3d at 227, in support of their argument that Appellants’

fraudulent inducement claims are subject to the Forum Selection Clause. Specifically,

Respondents argue that this case is “very similar” to Major in that the Court held that the

plaintiff’s various claims, which included breach of contract and several related tort claims, were

subject to the parties’ forum selection clause. Thus, Respondents further argue that, like in

Major, Appellants’ fraudulent inducement claims “cannot be divorced from the language of the

 18
[F]inance [A]greements” because their tort claims “can only be resolved by reference to the

obligations contained in the [F]inance [A]greements.” We agree that Major supports our holding

that Appellants’ fraudulent inducement claims (against Delta and Brown only) are subject to the

Forum Selection Clause. Specifically, like the plaintiffs in Major attempted to do, Appellants

have essentially recast their breach of contract claims in tort. However, Appellants’ creative

pleading cannot avoid the inevitable applicability of the Forum Selection Clause to these claims.

See also Riley, 412 S.W.3d at 291; Estate of Athon, 88 S.W.3d at 30.

 Finally, we acknowledge this Court’s recent decision in Luebbering v. Varia, ED109341,

2021 WL 4530521 (Mo. App. E.D. Oct. 5, 2021), which was handed down the same day oral

argument was held in this case, and contains many facts similar to those here. Luebbering

involved deciding whether the forum selection clause in the parties’ contract for the sale of a

residential property governed a variety of tort claims, including fraudulent inducement claims.

Id. at *1-2. The forum selection clause at issue governed “[a]ny dispute arising under or in

connection with this [contract] and any claim affecting its validity, construction, effect,

performance or termination….” Id. at *1. Although we ultimately held that this forum selection

clause was “not sufficient to expressly encompass tort claims,” id. at *4, we find that Luebbering

is distinguishable from this case. Specifically, in Luebbering, the forum selection clause was

contained in a rider to the general real estate sales contract, not the general contract for the sale

of the residence, and the torts alleged were not specific to the rider. In this case, however,

because the Finance Agreements appear to be the only contract documents signed between the

parties, Appellant’s fraudulent inducement claims specifically relate to these agreements. Also,

as noted in our analysis of Riley v. Lucas Lofts Investors, LLC, supra, because Appellants are

claiming that their damages are the same as what they would have received if the Finance

 19
Agreements had been fully performed, they are effectively suing in tort to enforce the

agreements. Therefore, we find that the combination of the broad forum selection clause in the

Finance Agreements and the pleaded tort claims, which require resort to those agreements

containing the Forum Selection Clause, distinguish this case from Luebbering, and thus does not

affect our disposition of this case.

 Next, we discuss the issues raised in Appellants’ third point on appeal—that it would be

unfair and unreasonable to enforce the Forum Selection Clause because: (a) it was procured by

fraud; and (b) enforcement “would risk duplication of effort, collateral estoppel or res judicata

problems, or inconsistent adjudications.” We address each argument in turn below.

 First, with respect to Appellants’ argument that it would be unfair and unreasonable to

enforce the Forum Selection Clause because it was procured by fraud, this argument is without

merit because the Petition contains no allegations that the Forum Selection Clause itself was

procured by fraud; rather, the Petition only alleges that the Finance Agreements, in general, were

procured by fraud. However, in order to invalidate a forum selection clause on the basis of

fraud, the party must make specific allegations of fraud with respect to the forum selection

clause, and not just the entire agreement in which it is contained. See, e.g., Raydiant

Technology, LLC v. Fly-N-Hog Media Group, Inc., 439 S.W.3d 238, 240 (Mo. App. S.D. 2014);

see also Karon v. Elliot Aviation, 937 N.W.2d 334, 344-45 (Iowa 2020) (discussing numerous

cases, including Raydiant, that have adopted this rule). Accordingly, we reject Appellants’

fraudulent inducement argument as it pertains to the Forum Selection Clause in particular.7

7
 However, we make no comment as to the sufficiency of the allegations in the Petition regarding Appellants’
broader claims that the Finance Agreements themselves were procured by fraud, which is left for future
determination.

 20
 Second, with respect to Appellants’ argument that enforcement of the Forum Selection

Clause would raise a variety of issues related to the potential for two separate lawsuits (one

against Delta and Brown in Texas, and one against Horton and Still in Missouri), this argument

is also without merit. In support, Appellants rely on Scott v. Tutor Time Child Care Systems,

Inc., 33 S.W.3d at 679. However, we find Scott inapposite for the reasons set forth below.

 In Scott, the Western District of this Court held that an outbound forum selection clause

should not be enforced due to similar “public policy” concerns raised by the Court, including a

desire “[t]o avoid duplication of effort, and avoid potential problems of collateral estoppel or res

judicata or inconsistent adjudications that could theoretically result from separating the trials of

[the parties’] related claims.” Id. at 683. These “public policy” concerns arose due to the

complex and highly unusual procedural posture of the case. If the forum selection clause at issue

in Scott had been strictly enforced, it would have required some parties to litigate certain cross-

claims in Missouri while closely related claims of other parties would have been litigated in

Florida. See id. at 683 n.2. However, the procedural posture in this case is notably different

from Scott in that there are no cross-claims and counterclaims being asserted by the

Respondents. Rather, this case will proceed as follows: Appellants may assert their fraudulent

inducement claims against Delta and Brown in a new action in Texas, while similar claims may

proceed against Horton and Still, on remand, in this matter in Missouri. Since Appellants would

have been required to present evidence supporting their fraudulent inducement claims against

each Respondent independently (even if tried in one action), there is no danger of res judicata or

collateral estoppel concerns as to these four defendants. Finally, while we acknowledge that

there may be some inefficiency for the parties and the trial courts in trying the fraudulent

inducement claims in two different forums, we find that this consideration, although important,

 21
simply does not outweigh the interest in respecting the parties’ agreement to litigate claims

governed by the Forum Selection Clause in Texas involving the two signatories of the Finance

Agreements (i.e., Delta and Brown), while also respecting Missouri law by holding that Horton

and Still may not enforce the Forum Selection Clause because they are neither signatories to, nor

third-party beneficiaries of, the Finance Agreements. Verni, 212 S.W.3d at 153; Nitro, 194

S.W.3d at 345. The Southern District in Westfall reached a similar result in that case, noting that

“our supreme court deems arbitration a matter of agreement, even if arbitrated and non-arbitrated

issues are ‘inextricably intertwined.’” 349 S.W.3d at 490 (citing Netco, 194 S.W.3d at 361-62;

and Nitro, 194 S.W.3d at 351). More to the point, Westfall specifically noted that, “[w]e are not

free to erode arbitration’s voluntary nature for the sake of judicial convenience.” Id. at 491.

Likewise, we are not free to erode the voluntary and contractual nature of forum selection

clauses, such as the Forum Selection Clause in this case, for the sake of “judicial convenience.”

 IV. Conclusion

 For the foregoing reasons, we hold that the circuit court correctly dismissed Counts I and

II of the Petition as to Delta and Brown in its Judgment and Order entered on August 14, 2020.

Accordingly, we AFFIRM the circuit court’s dismissal of Counts I and II of the Petition as to

Delta and Brown. For clarity, although the dismissal of Counts I and II as to Delta and Brown is

with prejudice to refiling those claims in Missouri, the dismissal is without prejudice to refiling

those claims in Dallas County, Texas. However, we further hold that the circuit court erred in

dismissing Counts I and II of the Petition as to Horton and Still. Accordingly, we REVERSE the

 22
circuit court’s dismissal of Counts I and II as to Horton and Still, and REMAND for further

proceedings consistent with this opinion.8

 _______________________________
 Kelly C. Broniec, Judge

Kurt S. Odenwald, P.J. and
John P. Torbitzky, J. concur.

8
 In remanding this case for further proceedings consistent with this opinion, we are mindful that Family and Trustee
each previously obtained judgments against Delta with respect to Counts III and IV of the Petition (i.e., claims for
bad checks). Thus, in the event that Family and Trustee subsequently obtain judgments against Respondents with
respect to their fraudulent inducement claims, Respondents may raise the issue of whether those judgments would
constitute a double recovery (or a “windfall”) under applicable Missouri or Texas law, as appropriate. See, e.g.,
Trimble v. Pracna, 167 S.W.3d 706, 716 (Mo. banc 2005) (recognizing that “although a party should be fully
compensated for its loss, it should not recover a windfall”); Kincaid Enters., Inc. v. Porter, 812 S.W.2d 892, 900
(Mo. App. W.D. 1991) (recognizing that although “[a] single transaction may invade more than one right, and the
injured person may sue on more than one theory of recovery,” the plaintiff “may not be made more than whole or
receive more than one full recovery for the same harm”); Vogt v. Hayes, 54 S.W.3d 207, 211 (Mo. App. S.D. 2001)
(recognizing that “[i]f the proven damages for both the breach of contract and for the tort are the same, then the
damage award merges”); Foley v. Parlier, 68 S.W.3d 870, 882-83 (Tex. App.-Fort Worth 2002) (recognizing that,
“a double recovery exists when a plaintiff obtains more than one recovery for the same injury); Drury Sw., Inc v.
Louie Ladeaux #1, Inc., 350 S.W.3d 287, 293 (Tex. App.-San Antonio 2011) (recognizing that, “[a]lthough a party
is generally entitled to pursue damages through alternative theories of recovery, ‘[a] party is not entitled to a double
recovery’” (quoting Waite Hill Servs., Inc. v. World Class Metal Works, Inc., 959 S.W.2d 182, 184 (Tex. 1998)).
We do not comment on the viability of this issue on remand other than to simply say that it should be fully
considered by the trial courts if necessary and timely raised by Respondents.

 23